**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| TIMOTHY CLAIR SHANNON,<br><br>    Plaintiff,<br><br>vs.<br><br>OFFICER MICHAEL KOEHLER, in his individual and official capacities; CITY OF SIOUX CITY; and, JOSEPH C. FRISBIE, individually and in his official capacity,<br><br>    Defendants. | No. C 08-4059-MWB<br><br>**ORDER REGARDING PLAINTIFF TIMOTHY CLAIR SHANNON'S APPEAL OF MAGISTRATE JUDGE'S ORDER** |

_____

## *I. INTRODUCTION AND BACKGROUND*

This case is before the court on claimant Timothy Clair Shannon's appeal of Chief United States Magistrate Judge Paul A. Zoss's order denying Shannon's Motion to Quash a subpoena served on him by the defendants, seeking a copy of Shannon's personnel file. In his appeal of Judge Zoss's order, Shannon requests that this court reverse Judge Zoss's ruling, and grant his Motion to Quash.

On July 29, 2009, the defendants issued a subpoena to the Iowa Department of Public Safety (Department), requesting Shannon's complete employment file with regard to Shannon's employment with the Iowa State Patrol from 1979—1982, and as Special Agent with the Division of Criminal Investigation in the narcotics unit from 1982 until Shannon's resignation on April 29, 1992. On November 13, 2009, the Department filed a Motion to Quash Subpoena, which Shannon joined on November 18, 2009. The

defendants responded on November 18, 2009, by filing a Resistance to the Department's Motion to Quash.

On November 20, 2009, a hearing was held on the Motion to Quash before the Honorable Paul A. Zoss, Chief United States Magistrate Judge. At the hearing, Judge Zoss reserved ruling on the Motion to Quash and ordered the Department to produce the complete personnel file of Shannon to the court for *in camera* review. After *in camera* review, on August 24, 2010, Judge Zoss denied the Motion to Quash and ordered production of the file after September 10, 2010, to allow time for appeal. Significantly, Judge Zoss noted that during Shannon's deposition, Shannon described himself as "extremely well trained, extremely well educated" and "as trained and probably better trained than [Koehler]." Judge Zoss also pointed out that Shannon at the deposition stated he would "not disrespect . . . that badge I personally could never attack. Just like I couldn't attack another marine. I have respect for that. I will honor that. I will die with that. Did not touch him. Could not even if I wanted to. It is not in me." Furthermore, Judge Zoss recognized that Shannon's expert witness, Joseph Stine, formed his opinions on the basis that "Mr. Shannon was a decorated ex-police officer and because of that he was less likely to be a threat. Because of his background he was more likely to be amenable to verbal persuasion to desist any actions that were interpreted by Officer Koehler to be threatening." Judge Zoss concluded that Shannon's claims during his deposition, in addition to Shannon's expert witness referring to Shannon's background, made Shannon's employment with law enforcement relevant.

On September 7, 2010, Shannon filed an Appeal of the Order Denying Motion to Quash. On appeal, Shannon argues that Judge Zoss erred in denying the Motion to Quash and ordering production of Shannon's personnel file because Shannon's personnel file has no relevance to the case and the personnel file is privileged under IOWA CODE § 22.7(11).

On September 17, 2010, the defendants filed a Response to Plaintiff's Appeal of Order Denying Motion to Quash. In their response, the defendants claim that Judge Zoss correctly held that Shannon's employment history with the Department was relevant, because it was relied upon by Shannon and Shannon's expert, Joseph Stine, to establish credibility. The defendants also assert that such history is relevant because it relates to the claims detailed in Shannon's complaint. Finally, the defendants argue that IOWA CODE § 22.71 does not create an unequivocal confidentiality provision, because the statute itself creates an exception. This exception is when "ordered by a court," which the defendants contend, Judge Zoss correctly ordered.

## II. ANALYSIS
### A. *Standard of Review*

When reviewing a magistrate judge's nondispositive order, the court applies a "clearly erroneous" or contrary-to-law standard. FED. R. CIV. P. 72(a); see, e.g., *Benedict v. Zimmer*, 232 F.R.D. 305, 316 (N.D. Iowa 2005). The order is "clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Gateway, Inc. v. Companion Prods., Inc.*, 384 F.3d 503, 507-08 (8th Cir. 2004) (quoting *Prufrock Ltd. v. Lasater*, 781 F.2d 129, 133 (8th Cir. 1986)); see *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996). "Stated another way, '[t]o be clearly erroneous, a decision must strike [the court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *United States v. Sanders*, 424 F.3d 768, 778 (8th Cir. 2005) (citing *In re Papio Keno Club, Inc.*, 262 F.3d 725, 729 (8th Cir. 2001)).

## B. Privilege

Shannon contends that his personnel file is absolutely privileged by virtue of IOWA CODE § 22.7(11). IOWA CODE § 22.7(11) states (emphasis added),

> The following public records shall be kept confidential, *unless otherwise ordered by a court*, by the lawful custodian of the records, or by another person duly authorized to release such information:
> . . . .
> 11. Personal information in confidential personnel records of public bodies including but not limited to cities, boards of supervisors and school districts.

Emphasized above, and contrary to Shannon's blanket claim for privilege, the Iowa statute requires that public records, such as Shannon's personnel file, remain confidential "unless ordered by a court."[1] In this case, Shannon's personnel file was ordered to be produced by Judge Zoss.

I now turn towards the question of whether Judge Zoss was clearly erroneous when he determined Shannon's personnel file was not subject to a privacy exemption under Iowa law. Iowa's "open records" act, IOWA CODE § 22, "invites public scrutiny of the government's work, recognizing that its activities should be open to the public on whose behalf it acts." *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999); *Northeast Council of Substance Abuse, Inc. v. Iowa Dep't of Pub. Health*, 513 N.W.2d 757, 759 (Iowa 1994). In this case, Shannon argues that his personnel file, if not absolutely privileged, is still exempted under IOWA CODE § 22.7(11) because state

---

[1] "Disclosure is the rule, and one seeking the protection of one of the statute's exemptions bears the burden of demonstrating the exemption's applicability." *Clymer*, 601 N.W.2d at 45; *DeLaMater v. Marion Civil Serv. Comm'n*, 554 N.W.2d 879, 878 (Iowa 1996).

4

employees have a substantial privacy interest in many aspects of their file. In determining whether a statutory exemption applies to a personnel file, "courts will usually first examine the specific statutory provision involved to see if the statute delineates exactly what types of records or other information are considered private and thus subject to the public disclosure exemption." *DeLaMater v. Marion Civil Serv. Comm'n*, 554 N.W.2d 875, 879 (Iowa 1996). Regarding IOWA CODE § 22.7(11), "neither the term 'personal information' nor the phrase 'confidential personnel records' is defined by Iowa statute." *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 44 (Iowa 1999) (citing *DeLaMater v. Marion Civil Serv. Comm'n*, 554 N.W.2d 879 (Iowa 1996)).

Because IOWA CODE § 22.7(11) is unclear as to whether Shannon's personnel file, as a former law enforcement officer, is subject to a privacy exemption, a fact specific, balancing test should be applied that compares "the public interests served by disclosure against the private interest in protecting against invasions of privacy." *accord City of Dubuque v. Telegraph Herald, Inc.*, 297 N.W.2d 523, 527; *DeLaMater*, 554 N.W.2d at 878; *Clymer*, 601 N.W.2d at 45. Courts typically consider several factors when applying the balancing test:

> (1) the public purpose of the party requesting the information; (2) whether the purpose could be accomplished without the disclosure of personal information; (3) the scope of the request; (4) whether alternative sources for obtaining the information exist; and (5) the gravity of the invasion of personal privacy.

*DeLaMater*, 554 N.W.2d at 879. Applying these factors to Shannon's personnel file, the public purpose of the party requesting the information, coupled with the scope of the request, far outweigh the gravity of the invasion of personal privacy. The public purpose is to determine whether excessive force was employed in the arrest of a civilian;

specifically, use of the information in these files to determine whether the force used by Koehler, in his arrest of Shannon, was warranted. The scope of the request is minimal, in that it affects only one individual who has been retired from law enforcement for eighteen years. Furthermore, after Shannon's reliance, and significantly his expert's reliance, on Shannon's background as a law enforcement officer, the defendants seek to discover precisely that background. This purpose could not be accomplished without the disclosure of Shannon's personnel file, and there are no alternative sources for obtaining this information. Therefore, in light of these determining factors, I find that Judge Zoss was not clearly erroneous when he decided that Shannon's personnel file was not exempt from discovery under IOWA CODE § 22.7(11).

## C. Relevancy

The scope of discovery under Federal Rule of Civil Procedure 26 is exceedingly broad. Parties may obtain discovery regarding any matter that is (1) "not privileged" and (2) "relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1). Shannon's personnel file, as discussed above, is not privileged under IOWA CODE § 22.7(11). Therefore, I turn now to whether Judge Zoss was clearly erroneous in finding that Shannon's personnel file was relevant. The phrase "relevant to the subject matter involved in the pending action . . . has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Thus, any nonprivileged information is discoverable so long as it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

6

Judge Zoss determined that Shannon's past employment with law enforcement was relevant because Shannon claimed that he was extremely well trained and that he would never "attack the badge," and, his expert witness, Joseph Stine, relied on Shannon's background in forming his expert opinion. Shannon bears the burden of establishing that his personnel file is not relevant. *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000) (holding that "the party resisting production of the requested information bears the burden of establishing lack of relevancy."). Shannon argues that his personnel file is not relevant for four reasons. The first reason is that Shannon's statements concerning his training and that he would never "attack the badge" came up during questioning by the defense. Therefore, Shannon contends, the defense is the party that set up the response and it is inappropriate that they are now seeking to impeach Shannon with what they believe will be acts of disrespect to the badge in his employment file.

Contrary to Shannon's assertion that defense counsel somehow tricked Shannon into declaring that he would never disrespect the badge and that he had better training than Officer Michael Koehler, I find that Shannon volunteered this information in response to unrelated questions presented by the defense. During the deposition taken on December 18, 2008, defense counsel commented on a video recording of the arrest that "I respectfully disagree with you about what the video shows, and we'll have to respectfully disagree." Afterwards, Shannon immediately responded, " . . . I did not touch him. I am as trained and probably better trained than him." Defense counsel followed up, asking Shannon, "I take it your testimony, as we sit here today, is that you did not touch him?" Shannon responded,

> I did not touch that officer. I would not disrespect, even though him personally or him or whatever you think I may care about him, that badge I personally could never attack . . . I have respect for that. I will honor that. I will die with that. Did not touch him. Could not even if I wanted to. It is not in me.

(docket no. 84-2, p. 9) Consequently, I find that Shannon volunteered this testimony as a basis to bolster his credibility when he adamantly denied ever touching Koehler.

Secondly, Shannon cites *Williams v. Mensey*, 785 F.2d 631 (8th Cir. 1986), to support his argument that personnel records of officers are nondiscoverable or irrelevant. However, the *Williams* case was more fact specific than Shannon suggests. The Eighth Circuit Court of Appeals did not hold that an officer's personnel records are always inadmissible. Instead, the Eighth Circuit Court of Appeals found that the district court did not grossly abuse its discretion when it denied the motion to produce personnel records. Specifically, after reviewing the personnel files, the Eighth Circuit Court of Appeals found that these files were irrelevant because there were no records in the files relating to the issue at hand, particularly, the use of excessive force or other similar misconduct by the defendant correctional officers. In this case, Shannon himself made his law enforcement background an issue when he relied upon it to substantiate his credibility and "better training" as evidence that he would never touch Koehler. As a result, I find that Judge Zoss was not "clearly erroneous" when he decided that Shannon's personnel history is relevant.

Thirdly, Shannon asserts Judge Zoss erred in finding Shannon's personnel file relevant based on the fact that Shannon's expert witness, Joseph Stine, had relied on Shannon's background as an ex-police officer in reaching his expert opinion. Shannon asserts that Stine was basing his opinions on his general knowledge of police officers and

not detailed examples of Shannon's employment with the Department. Therefore, Shannon argues that Stine's opinion does not make the contents of Shannon's employment file relevant. Nevertheless, when reviewing the Expert Opinion Report by Joseph J. Stine (docket no. 84-2, p. 12), I find specific examples where Stine significantly relies on Shannon's law enforcement background when forming his opinion that Shannon did not touch Koehler. For instance, Stine concludes,

> Mr. Shannon was a *decorated* ex-police officer and because of that he was less likely to be a threat. Because of his *background* he was more likely to be amenable to verbal persuasion to desist any actions that were interpreted by Officer Koehler to be threatening.

*Id.* at 22 (emphasis added). In light of these examples, where Stine is clearly relying on Shannon's background in reaching his expert opinion that Shannon was less likely to be a threat to Koehler, I find that Judge Zoss's ruling was not "clearly erroneous" when he decided that Shannon's employment history with law enforcement is relevant.

Shannon contends the fourth reason Judge Zoss used to justify disclosure of the personnel files is that Shannon is making a claim for "lost reputation." Shannon contends that, because he is no longer making a claim for "lost reputation," evidence seeking to prove or disprove such a claim is a non-issue, and therefore not relevant. However, in Shannon's Complaint (docket no. 2, p. 13), Shannon prays for relief in the form of "damage to personal and business reputation . . ." As Shannon has not filed an amended complaint or dismissed this claim for damages, any evidence relating to Shannon's reputation, such as detailed in his personnel file, would still be relevant. As a result, I find that Judge Zoss's ruling was not "clearly erroneous" when he decided that Shannon's background is relevant for determining his reputation in the community.

9

### *III. CONCLUSION*

Accordingly, I conclude that Judge Zoss's order was neither clearly erroneous nor contrary to law. While I personally would have granted Shannon's Motion to Quash, however, I am unwilling to find Judge Zoss's decision clearly erroneous. Therefore, Judge Zoss's order denying Shannon's Motion to Quash a subpoena, is affirmed.

**IT IS SO ORDERED.**

**DATED** this 6th day of October, 2010.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA