# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

TIMOTHY CLAIR SHANNON,

     Plaintiff,

vs.

OFFICER MICHAEL KOEHLER, in his individual and official capacities, CITY OF SIOUX CITY, and JOSEPH C. FRISBIE, in his individual and official capacities,

     Defendants.

No. C 08-4059-MWB

**ORDER REGARDING DEFENDANTS' MOTIONS IN LIMINE; PLAINTIFF'S SECOND MOTION IN LIMINE; AND DEFENDANTS' MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EXPERTS, JOSEPH STINE AND ZHONGMING HUANG, OR, IN THE ALTERNATIVE, CHALLENGING ADMISSIBILITY OF TESTIMONY OF JOSEPH STINE AND ZHONGMING HUANG UNDER FED. R. EVID. 702**

**TO BE FILED UNDER SEAL**

——————————

## TABLE OF CONTENTS

*I.* *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A.* *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *B.* *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*II.* *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   *A.* *Defendants' Motions in Limine* . . . . . . . . . . . . . . . . . . . . . 16
      *1.*   *Shannon's acquittals and conviction* . . . . . . . . . . . . . 16
      *2.*   *Prior excessive force claims against Koehler* . . . . . . . . . . . 31
      *3.*   *Motor vehicle accident* . . . . . . . . . . . . . . . . . . . . 37

    *4.     El Forastero investigation* . . . . . . . . . . . . . . . . . . . . . . . 38

    *5.     Offers of compromise and "Golden Rule" arguments* . . . . . . 38

    *6.     Excessive force incident reports* . . . . . . . . . . . . . . . . . . 40

    *7.     Bifurcation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

  *B.  Plaintiff's Second Motion In Limine* . . . . . . . . . . . . . . . . . . . . . . 41

    *1.     Shannon's OWI conviction* . . . . . . . . . . . . . . . . . . . 41

    *2.     Cristina Navrkal's hearsay statements* . . . . . . . . . . . . . . 46

  *C.  Defendants' Motion To Exclude Plaintiff's Experts* . . . . . . . . . . 54

    *1.     Arguments of the Parties* . . . . . . . . . . . . . . . . . . . . . . . 54

    *2.     Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

*IV. APPENDIX: PROPOSED LIMITING INSTRUCTION* . . . . . . . . . . . . . 68

# I. INTRODUCTION

Plaintiff Timothy Shannon has filed suit against Officer Michael Koehler, the City of Sioux City, and Police Chief Joseph Frisbie, alleging excessive force under § 1983 and state claims for assault and battery, as well as municipal liability on each claim. Trial is set to proceed against Koehler in November 2011, with a separate trial of the remaining defendants to follow. Before me at this time are Defendants' Motions In Limine[1];

---

[1] Several of the defendants' motions in limine, including those relating to offers of compromise and "Golden Rule" arguments, appear to be boilerplate additions that did not truly require a court order. Shannon's responses indicate that he has no intention of introducing such evidence. The defendants easily could have—and indeed should have—conferred with Shannon to see if both sides could come to an agreement. If they had conferred, the defendants might have spared one of the trees used in ruling on these

(continued...)

Plaintiff's Second Motion In Limine; and Defendants' Motion In Limine To Exclude Plaintiff's Experts, Joseph Stine And Zhongming Huang, Or, In The Alterative, Challenging Admissibility of Testimony of Joseph Stine And Zhongming Huang Under Fed. R. Evid. 702. I will address the motions to the extent they relate to the upcoming trial of Defendant Koehler. I deny as premature those motions that relate to evidence solely pertaining to the trial of the City of Sioux City and Joseph C. Frisbie.

### A. Factual Background

In my December 4, 2009, Memorandum Opinion And Order Regarding Defendants' Motion For Summary Judgment, I made the following findings of fact:

> This case arises from an incident that occurred on September 13, 2006, at Tom Foolery's Pub and Grill ("Tom Foolery's") in Sioux City, Iowa. On September 12th, and the early morning of September 13th, Plaintiff Timothy Shannon [("Shannon")] had had several alcoholic drinks and believed himself to be intoxicated to the point where he could and should not drive a vehicle. At approximately 1:16 a.m., on the morning of September 13th, Christina Navrkal [("Navrkal")] and Jill Murad [("Murad")] visited Shannon at Tom Foolery's. Murad had called Navrkal to transport her to Tom Foolery's because Stacy, Murad's sister, had informed Murad that Shannon had had too much to drink and needed help getting home—Murad needed Navrkal to drive her because Murad did not have a license. Navrkal, however, also knew Shannon because she had worked with him at the now defunct Steak Block restaurant in Sergeant Bluff, Iowa. When

---

[1](...continued)
motions.

3

Murad and Navrkal arrived at Tom Foolery's, they were intoxicated.

The defendants claim that, once Navrkal and Murad arrived at Tom Foolery's, the two women entered into an altercation with Shannon. In fact, the defendants claim that Shannon punched the left side of Navrkal's face with a close fisted right punch. Navrkal grabbed the side of her face with her hand. Murad then shoved Shannon with both hands causing him to fall backward and onto the floor. After Murad shoved Shannon, she turned around, grabbed her beer, and walked to the front of the bar, near the door, with Navrkal. Navrkal continued to hold her face. Shannon remained on the floor, behind the bar, until a male bartender picked up the liquor bottles that Shannon knocked over in his fall and assisted Shannon to his feet. Murad continued yelling at both the male bartender and Shannon while Navrkal continued to walk around with her hand to her face. The male bartender left the bar at approximately 1:30 a.m.

At approximately 1:40 a.m., Murad called 911 because she became concerned for Shannon's well-being based on the head injury he received from the fall. Murad advised the dispatcher that Shannon's head was bleeding. This first 911 call ended, and Murad called 911 a second time and stated there had been an argument and to please send an ambulance.

At approximately 1:46 a.m., Sioux City Police officers were dispatched to Tom Foolery's. Two dispatches went out. The first was for a medical call requesting an ambulance. The second advised officers of a disturbance at the bar between two females and that there was an injured person there. [Defendant Michael] Koehler [("Koehler")] volunteered to respond to the scene because he was only about a block away. Koehler was the first officer to arrive at Tom Foolery's. Koehler was met at the door by Murad, who let him into the bar.

According to the defendants, as Koehler was entering the bar, Murad stated that one of the females in the bar had been "touched or grabbed by the male who was in the bar." However, Shannon alleges that he did not hear anyone make

4

such a statement and claims that Murad has testified in her deposition that she does not know if she made such a statement to Koehler. Koehler walked to the middle of the bar with Murad and stopped. Murad pointed at Shannon.

It is undisputed that Shannon walked out from behind the bar and toward Koehler. However, the defendants claim that, as Shannon approached Koehler, Shannon swore at him, kicked an overturned bar stool, demanded that Koehler leave the premises, and then aggressively approached Koehler with his right arm extended and with two fingers pointed at Koehler. The parties agree that, while approaching Koehler, Shannon stated something like, "I'm Tim Shannon, I own this bar, get out;" asked Koehler for a warrant; "strongly" told Koehler to leave; and probably used profanity. Shannon further admits that he probably came up to Koehler and told him to "get out . . . I don't need you . . . I don't want you in here . . . I don't need you, get out." The parties agree that Shannon stopped his approach toward Koehler when he was approximately an arm's length away. Although Shannon admits that he approached Koehler, Shannon claims that Koehler had asked him to approach. Shannon also claims that his approach toward Koehler was not aggressive and did not involve him kicking a bar stool. Instead, Shannon claims that he walked toward Koehler with his hands out so that Koehler could see them and that he had a finger pointed at Koehler. While Shannon and Koehler were at arm's length, Murad and Navrkal were to Koehler's right and Shannon's left.

The defendants claim that Shannon then poked Koehler in the chest with his two fingers, while Shannon denies that he touched Koehler. It is undisputed that shortly after Shannon neared Koehler, Koehler turned off his flashlight and placed both hands behind his back in order to holster his flashlight in the ring holder located in the middle of the backside of his belt. The defendants allege that Shannon then poked Koehler in the chest a second time, and it is undisputed that Koehler took Shannon down by pushing his upper body and sweeping his legs—the parties dispute whether Koehler performed a

proper leg sweep.[2]  The defendants claim that Koehler learned the leg sweep technique at the police academy.  However, Shannon claims that the leg sweep technique actually used by Koehler was not included in the Defensive Tactics Instructor School description (Defendants' App. 118) and is not taught in police academies as an effective control and compliance measure.  Because of Koehler's actions in taking down Shannon, he fell backward onto a bar stool.  Shannon claims that Koehler was aware that the bar stool was there.  The defendants claim that Shannon had knocked over the stool and that Koehler did not know that it was there.

After Shannon was on the ground, Koehler attempted to handcuff him.  Koehler told Shannon to put his arms behind his back.  Koehler grabbed Shannon by the arm, rolled him and was able to get his left arm behind his back.  Koehler was able to get one handcuff on Shannon's left arm.  The defendants claim that Shannon tucked his right arm underneath his body and would not put it behind his back despite being ordered by Koehler to do so.  The defendants also claim that, while Shannon was being handcuffed, he was belligerent.  However, Shannon denies that he tucked his right arm underneath his body, denies not putting it behind his back, and denies that he was belligerent.

Shannon claims that he received the following injuries on September 13, 2006: atelectasis in the base of the left lung (collapsed lung), multiple fractured ribs, a contusion to the head, a five centimeter laceration to the head, bruising on the left leg, left shoulder, left arm, and pelvis/hip, and a laceration to the right shoulder.  The defendants claim, however, that the medical records from that night show that Shannon was only treated for a head laceration, which required stitches.

(docket no. 60, pp. 4-8.)

---

[2]  The "leg sweep" technique is a use of force procedure taught in police academies as an effective control and compliance measure.

## B.  Procedural Background

On August 1, 2008, Plaintiff Timothy Shannon filed a Complaint (docket no. 2) with this court concerning an incident that took place on September 13, 2006, naming Officer Michael Koehler, the City of Sioux City,[3] and Police Chief Joseph Frisbie as defendants (collectively, the "defendants").  In Count 1, Shannon alleges that Koehler used excessive force in arresting him, in violation of the Fourth Amendment of the United States Constitution.  Shannon brings a cause of action for this violation under 42 U.S.C. § 1983.  Shannon claims that Defendants City of Sioux City and Chief Frisbie are liable under § 1983 because they allegedly established, authorized, or tolerated policies and practices that were intended to and did encourage, endorse, and permit their agents and employees to violate Shannon's, and other similarly situated individuals', constitutional rights.  In Count 2, Shannon alleges that all defendants, directly or through *respondeat superior* liability, committed assault and battery.

On August 31, 2009, the defendants filed their Motion for Summary Judgment and Request for Oral Argument and accompanying filings.  (docket no. 31.)  The defendants alleged that Koehler was entitled to qualified immunity on all counts, including the state assault and battery charges.  In addition, the defendants claimed that, even if Koehler's actions were unconstitutional, Shannon could not meet his burden to demonstrate that the City or Chief Frisbie tolerated an unconstitutional policy, practice, or custom of failing to train and supervise officers.  I denied the defendants' motion for summary judgment, in

---

[3] Shannon also named the Sioux City Police Department as a defendant.  *See* docket no. 2.  However, I granted the Sioux City Police Department's Rule 12(b)(6) Motion to Dismiss Sioux City Police Department, as it is not a suable entity but simply a subdivision of a municipality.  *See Shannon v. Koehler*, No. C 08-4059-MWB, 2008 WL 4735265 at *5 (N.D. Iowa Oct. 13, 2008).  Thus, the Sioux City Police Department is no longer a named party.

its entirety, on December 4, 2009.  *See Shannon v. Koehler*, 673 F. Supp. 2d 758, 805 (N.D. Iowa 2009).  On December 8, 2009, the defendants filed a notice of interlocutory appeal to the Eighth Circuit Court of Appeals.  In their appeal, the defendants sought reversal of my decision to deny defendants' Motion For Summary Judgment based upon Koehler's claims for qualified immunity; *Monell* liability; and reversal of my order bifurcating the *Monell* and respondeat superior claims from the individual claims against Koehler.  On August 18, 2010, the United States Court of Appeals for the Eighth Circuit affirmed my decision denying qualified immunity to Koehler.  The rest of the defendants' appeal was dismissed for lack of jurisdiction.  *See Shannon v. Koehler*, 616 F.3d 855, 866 (8th Cir. 2010).

On August 25, 2009, Shannon filed his First Motion In Limine To Bar Reference To Certain Facts Not Known At The Time Of Plaintiff's Arrest (Plaintiff's First Motion in Limine); Brief In Support Of Plaintiff's First Motion In Limine; and Affidavit Of W. Ken Katsaris.  (docket no. 30.)  On September 11, 2009, the defendants filed their Resistance To Plaintiff's First Motion In Limine, Oral Argument Requested; Defendants' Memorandum Of Law In Support Of Resistance To Plaintiff's First Motion In Limine; and Exhibits 1-6.  (docket no. 36.)  On September 18, 2009, Shannon filed his Reply Brief Regarding Plaintiff's First Motion In Limine.  (docket no. 39.)

On August 23, 2010, after the delay of an appeal, I filed an Order allowing the parties to supplement their limine filings.  (docket no. 73.)  Shannon complied with this Order by filing Plaintiff's Supplement To First Motion In Limine (Plaintiff's Supplement) on September 7, 2010.  (docket no. 78.)  On September 14, 2010, the defendants filed a Resistance To Plaintiff's Supplement, Oral Argument Requested, And Memorandum Of Law In Resistance To Plaintiff's Supplement.  (docket no. 82.)

On September 20, 2010, the defendants filed a Renewed Motion to Bifurcate Claims. (docket no. 85.) On October 4, 2010, Shannon filed his Resistance To Renewed Motion To Bifurcate Claims. (docket no. 87.) On November 3, 2010, I filed an Order Regarding Defendants' Motion To Bifurcate Claims And To Stay Discovery And Trial. (docket no. 90.) In this Order, I granted defendants' motion, bifurcating the constitutional and state tort claims against Koehler from the *Monell* and *respondeat superior* claims against the City of Sioux City and Joseph C. Frisbie.

On January 19, 2011, I filed a sealed Order Regarding Plaintiff's First Motion In Limine And Supplement. (docket no. 91.) In this Order, I granted Plaintiff's First Motion In Limine, to the extent that, defendants may not refer, directly or indirectly, to Shannon's alleged punch at, or assault on, Navrkal. I also granted Plaintiff's Supplement, to the extent that, defendants may not refer, directly or indirectly, to: Shannon's prior or subsequent "bad acts"; Shannon physically resisting the Woodbury County jailers on September 13, 2006; evidence contained within Shannon's employment file with the Iowa Department of Public Safety from 1979-1992; third party statements noted in the Sioux City Police reports describing the incident between Shannon and Koehler on September 13, 2006; Shannon's treatment for depression and prescription for Wellbutrin; the term "sugar daddy" to describe Shannon; Koehler responding to an "assault" dispatch; recorded statements by Murad and Navrkal; discussion of bifurcation issues; and dismissal of the Sioux City Police Department as a former party. I denied Plaintiff's Supplement, to the extent that, the defendants may refer, directly or indirectly, to: Shannon's intoxication on

September 13, 2006; and the Sioux City Police reports describing the incident between Shannon and Koehler on September 13, 2006.[4]

On March 9, 2011, the defendants filed Motions In Limine. (docket no. 98.) On that same day, the defendants filed a Motion In Limine To Exclude Plaintiff's Experts, Joseph Stine And Zhongming Huang, Or In The Alternative, Challenging Admissibility Of Testimony Of Joseph Stine And Zhongming Huang Under Fed. R. Evid. 702 (Defendants' Motions In Limine To Exclude Plaintiff's Experts). (docket no. 99.)[5] In defendants' Motions In Limine, they moved for an Order directing counsel for Shannon and his witnesses to refrain from making any mention or inquiry concerning: Shannon's acquittal for the charges of assaulting a peace officer that arose from the September 13, 2006, incident; any history of complaints against Koehler for using excessive force, both before and after Shannon's incident on September 13, 2006; evidence regarding the El Forastero investigation and the motor vehicle accident investigation involving Koehler and Shannon's wife; offers of compromise; Golden Rule arguments on the issue of liability or damages; complaints or investigations of excessive force levied against members of the Sioux City Police Department; and evidence regarding the *Monell* and respondeat superior claims. With regard to defendants' Motion In Limine To Exclude Plaintiff's Experts, defendants argue that Stine and Huang should be excluded from testifying at trial because each expert's opinion is not relevant, is unreliable and lacks any evidentiary basis, and

---

[4] I found these police reports and statements within the reports inadmissible insofar as Koehler is offering his own statements as an admission under Federal Rule of Evidence 801(d)(2)(A), and where the defendants are unable to redact the portions referring to Shannon's alleged assault on Navrkal under Federal Rule of Evidence 403.

[5] Defendants have requested oral arguments on both of their motions. I have determined that oral arguments would not be helpful in this instance.

neither is sufficiently qualified to testify in this matter. Defendants further argue that Stine's and Huang's opinions do not meet the standards for admissibility as outlined in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and, thus, request that I conduct a *Daubert* hearing to determine the sufficiency of the expert testimony.[6]

On March 25, 2011, Shannon filed a Resistance To Defendants' Motions In Limine (docket no. 104) and a Resistance To Defendants' Motion In Limine To Exclude Plaintiff's Experts (docket no. 105). In his Resistance To Defendants' Motions In Limine, Shannon maintains that inquiries into the criminal prosecutions arising from the September 13, 2006, incident, are not relevant and prejudicial, and therefore, have no bearing on the issue before the jury in assessing the reasonableness of Koehler's use of force. Furthermore, Shannon argues that if defendants are allowed to introduce evidence of Shannon's conviction for interference with official acts during the September 13, 2006, incident, the complete proceedings, including Shannon's acquittal on charges of assaulting a peace officer and public intoxication, are relevant under Federal Rules of Evidence 401 and 402 and therefore should be admissible. Shannon also asserts that he should be allowed to question defendants on any complaints against Koehler for excessive force, arguing that the prior complaints are proper evidence under Federal Rule of Evidence 404(b) because they demonstrate Koehler's motivation and intent to use force against Shannon and his disregard for his training on the use of force. Regarding Koehler's investigation of the motor vehicle accident involving Shannon's wife, the El Forastero investigation, offers of compromise, Golden Rule arguments, excessive force incident reports, and bifurcation issues, Shannon maintains he does not intend to offer evidence on

---

[6] I have determined that a *Daubert* hearing would not be helpful in this matter.

such matters at trial. In Shannon's Resistance To Defendants' Motion In Limine To Exclude Plaintiffs Experts (docket no. 105), Shannon argues that at the time the defendants filed their motion in March 2011, trial was set for just over one month away, even though the defendants had known about Shannon's experts for a year and a half. Thus, Shannon requests that I deny the defendants' request for a *Daubert* hearing because the timing smacks of gamesmanship and is prejudicial to Shannon. On the merits, Shannon contends that Stine is qualified as an expert, his testimony is based on sufficient facts and reliable methods, and would assist the jury in understanding the training, standards, and procedures a police officer applies in a given situation. Shannon maintains that challenges as to Huang's testimony are not properly before the court at this time because it relates solely to the *Monell* claim.

On April 4, 2011, the defendants filed reply briefs in support of each their motions in limine. (docket nos. 108, 109.) In the Reply In Support Of Defendants' Motions In Limine, defendants argue that as long as Shannon seeks damages incurred while Koehler was effecting his arrest, evidence of the conviction for Shannon's interference with official acts is relevant and admissible in explaining Koehler's use of force. Defendants also maintain that evidence of any prior or subsequent complaints against Koehler for using excessive force is in direct violation of Federal Rule of Evidence 404(b), which precludes evidence to show a character trait. With regard to Defendants' Reply Brief pertaining to Shannon's expert witnesses, defendants point out that their motion in limine was timely filed pursuant to the court's Trial Management Order. Defendants also argue that Stine has not demonstrated that he relied on Sioux City Police Department polices or CALEA standards in reaching his opinions, nor is Stine qualified to offer opinions on such policies or Koehler's training.

On May 17, 2011, Shannon filed his Second Motion In Limine.  (docket no. 119.) In this motion, Shannon argues that I should exclude any reference to Shannon's felony OWI conviction because it is irrelevant, improper character evidence, and inadmissible under Federal Rules of Evidence 609(a) and 403 because it has no probative value to any issue in the case and is outweighed by its prejudicial effect.  Shannon also claims that defendants may seek to admit hearsay statements by Cristina Navrkal as recorded recollections under Federal Rule of Evidence 803(5).  Shannon argues that such statements do not meet the requirements of Rule 803(5), because Navrkal did not have any knowledge of events because she was intoxicated at the time and because the statements do not accurately reflecting her knowledge at the time.

On May 25, 2011, defendants filed their Resistance To Plaintiff's Second Motion In Limine, Oral Argument Requested, requesting that the motion be denied in its entirety. (docket no. 122.)  The defendants argue that they should be allowed to question Shannon about his OWI conviction on February 24, 2011, for the purposes of impeachment under Federal Rule of Evidence 609(a).  They also contend that Navrkal's statements are indeed admissible under Rule 803(5) as a recorded recollection because the statements accurately reflected Navrkal's knowledge of Shannon's arrest by Koehler.

On May 31, 2011, Shannon filed a Response To Defendants' Resistance To Plaintiff's Second Motion In Limine (docket no. 123), stating that he did not intend to reply to Defendants' Resistance To Plaintiff's Second Motion In Limine.

I turn next to an analysis of the legal issues presented.[7]

---

[7] I find that oral arguments would not be helpful in this instance.

## II. ANALYSIS

As a preliminary matter, I note that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . ." FED. R. EVID. 104. Such preliminary questions may depend upon whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. I find here that a preliminary determination of the admissibility of evidence presented or challenged in the parties' respective motions in limine will likely serve the ends of a fair and expeditious presentation of issues to the jury. However, as explained below, I deny as premature the defendants' motions in limine on several issues that relate solely to the claims against the City of Sioux City and Joseph C. Frisbie. In accordance with the prior bifurcation of this case, the defendants may raise these issues if the case proceeds against the City of Sioux City and Joseph C. Frisbie.

The parties base their motions in limine frequently on the alleged irrelevance or prejudicial nature of certain challenged categories of evidence. Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority" and that "[e]vidence which is not

14

relevant is not admissible." FED. R. EVID. 402. Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403. The Eighth Circuit Court of Appeals has explained "prejudice" within the meaning of Rule 403 as follows:

> Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion. *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175 (2006). Rule 403 "does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 (1983).

*United States v. Myers*, 503 F.3d 676, 682 (8th Cir. 2007); *accord United States v. Farrington*, 499 F.3d 854, 858-59 (8th Cir. 2007). The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it revealed grisly or violent behavior that made the defendant appear dangerous). Unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States*

*v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)).

The Advisory Committee Notes to Rule 403 also explain that a determination on unfair prejudice should include consideration of the possible effectiveness or lack of effectiveness of a limiting instruction. FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Hawthorne*, 235 F.3d 400, 404 (8th Cir. 2000) (finding that relevance of evidence was not outweighed by any potential prejudice within the meaning of either Rule 404(b) or Rule 403 where the evidence was used for a limited purpose and the district court gave a limiting instruction).

Rule 403 also permits exclusion of relevant evidence on the basis of its potential for confusion of the issues. FED. R. EVID. 403. The Eighth Circuit Court of Appeals has explained, "'[c]onfusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues.'" *Firemen's Fund Ins. Co. v. Thien*, 63 F.3d 754, 758 (8th Cir. 1995) (quoting *United States v. Dennis*, 625 F.2d 782, 796-97 (8th Cir. 1980)).

### A. Defendants' Motions in Limine

### 1. Shannon's acquittals and conviction

The defendants seek to exclude evidence of Shannon's acquittal on the charge of assaulting a peace officer. Three criminal charges arose from the September 13, 2006, incident at issue in this case. Shannon was charged with assault of a peace officer, interference with official acts, and public intoxication. A jury found Shannon not guilty of assault of peace officer in case number SRCR069941, *see* Plaintiff's Exhibit 1 at 1 (docket no. 104-2), and Judge McCormick of the Iowa District Court for Woodbury County found him guilty of interference with official acts and not guilty of public

intoxication in case number SMSM445556, *see* Plaintiff's Exhibit 2 (docket no. 104-3).[8] The defendants anticipate that Shannon will attempt to introduce evidence of Shannon's acquittal for assault of a peace officer to prove that he did not touch Officer Koehler during the September 13, 2006, incident. The defendants contend that the acquittal is inadmissible for two reasons: first, under Rule 402, evidence of Shannon's acquittal is irrelevant because it does not prove innocence and instead only shows that the prosecution did not meet its high burden in a criminal case; and second, evidence of Shannon's acquittal is inadmissible hearsay. Finally, the defendants request an order requiring that the parties refer to the assault trial as "the prior court proceeding" if the parties use testimony from the assault trial for impeachment purposes.

Shannon responds that he does not plan to introduce evidence of any of the criminal proceedings, including the acquittal. He also agrees with the defendants' request that the parties refer to the trial as the "prior court proceeding" for impeachment purposes. Nevertheless, Shannon anticipates from the defendants' exhibit list that they plan to introduce evidence of the charges filed against Shannon and his conviction for interference with official acts. It appears that the exhibits in controversy are 1002, Shannon's admission that he was convicted of Interference with Official Acts; 1003, the Sioux City Police Department Incident Reports, which state the charges of Assault-Serious-Police Officer, Interference with Official Act, and Public Intoxication; and 1012, the Woodbury County judge's order finding Shannon guilty of interference with official acts and not guilty of public intoxication. Shannon argues that no evidence from any of the criminal

---

[8] The prosecution and Shannon agreed that the public intoxication and interference with official acts charges would be tried before a judge, and the assault of a peace officer charge would be tried before a jury. *See* Plaintiff's Exhibit 1, Woodbury County Court File at 1 (docket no. 104-2).

proceedings arising from the September 13, 2006, incident, including the charges filed against Shannon and his conviction for interference with official acts, should be introduced in this trial because the criminal proceedings are not relevant to whether Koehler used excessive force in arresting Shannon. Shannon argues that the reasons that Koehler used force on Shannon—suspected intoxication and assault of a peace officer—are relevant to this case, but that the actual charges for which Shannon was arrested are not. Shannon also argues that I should exclude evidence of the criminal proceedings under Rule 403 because it will only serve to confuse the jury, waste time, and unfairly prejudice Shannon.

Shannon maintains, however, that if I permit the defendants to introduce evidence of the charges against Shannon and his conviction for interference with official acts, I should also allow Shannon to introduce evidence that he was found not guilty of assaulting a peace officer and public intoxication. Shannon argues that because the defendants intend to interject evidence of the interference with official acts conviction into this trial, it would be misleading and unfairly prejudicial if Shannon could not also present evidence that he was found not guilty on the other charges that arose out of the same incident. Shannon asserts that the not guilty verdict on the assault of a peace officer charge is relevant to show that a jury, after hearing evidence very similar to that in this case, found Shannon innocent. Shannon also contends that both not guilty findings are relevant to show that Shannon maintained his innocence and denied Officer Koehler's claims throughout the criminal proceedings. In response to the defendants' argument that evidence of an acquittal would be hearsay, Shannon contends that his acquittals are not hearsay or, in the alternative, that they are hearsay subject to an exception. He argues that the acquittals would not be introduced to prove the truth of the matter asserted—that Shannon did not assault Koehler—but rather to show that Shannon maintained his innocence and to rebut the misleading impression created by only presenting evidence of Shannon's conviction.

Alternatively, Shannon asserts that the acquittals fall within the hearsay exceptions of Rule 803(6) for business records, Rule 803(8) for public records, or that it is sufficiently trustworthy to be subject to the exception of Rule 807.

The defendants reply that they do plan to introduce evidence of Shannon's conviction for interference with official acts. They argue that the conviction is relevant because it provides evidence of whether Koehler used reasonable force in arresting Shannon, the central issue in this case. The defendants quote Judge McCormick's ruling to show the conviction's relevance to this case: "The Court further finds Shannon knowingly resisted Officer Koehler in the officer's performance of the act of handcuffing the Defendant, which was in the scope of authority of that officer . . . ." Defendants' Exhibit 1012. The defendants state that, at a minimum, the conviction is relevant to whether Koehler used excessive force in handcuffing Shannon. Also, although the defendants do not develop the argument that the conviction should preclude Shannon from relitigating the issue of whether he interfered with Koehler's arrest, they mention in passing, while discussing *Greene v. Distelhorst,* 116 F.3d 1480, 1997 WL 351298, at \*3 (6th Cir. 1997) (unpublished table decision), that the plaintiff in that case, who was found guilty of resisting arrest, was precluded from relitigating that issue in his later § 1983 case.

The defendants assert that, even if I admit evidence of Shannon's conviction for interference with official acts, I should not permit Shannon to introduce evidence of his acquittal of assault of a peace officer. The defendants state that they will not introduce evidence of the charge of assault of a peace officer and offer to redact any mention in the Sioux City incident reports of that charge. The defendants do not respond to Shannon's argument that he should likewise be able to introduce evidence of Judge McCormick's finding of not guilty on the public intoxication charge. Indeed, it appears that defendants do not object to evidence of the not-guilty finding on the public intoxication charge, as

Judge McCormick's combined ruling on the public intoxication and interference with official acts charges is defendants' Exhibit 1012.[9]

Although this matter comes before me on the defendants' motion to exclude Shannon's acquittal for assault of a peace officer, I find that, before I can answer whether Shannon's acquittals are admissible, the first question I must consider is whether Shannon's criminal charges and interference with official acts conviction are admissible. If the charges and Shannon's conviction are inadmissible, then Shannon does not intend to introduce evidence of his acquittals, and the defendants' motion may be granted by agreement. However, if Shannon's conviction and charges are admissible, then I must also consider whether his acquittals are admissible.

To begin, I note that I must view the question of relevance in this case through the lens of the Fourth Amendment reasonableness standard, which governs claims for excessive force. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Reasonableness "is viewed from the vantage point of the police officer at the time of arrest or seizure." *Gill v. Maciejewski*, 546 F.3d 557, 562 (8th Cir. 2008) (citing *Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006)); *Billingsley v. City of Omaha*, 277 F.3d 990, 993 (8th Cir. 2002) ("The aforementioned reasonableness of force is judged from the perspective of the officer on the scene, taking into consideration the facts known to him, as opposed to one possessing the illuminating power of hindsight.") (citing *Nelson v. County of Wright*, 162 F.3d 986, 989 (8th Cir. 1998)); *Nelson*, 162 F.3d at 990 ("The issue of reasonableness must be examined from the perspective of the facts known to the officer at the time of the

---

[9] The defendants only request that I bar evidence of Shannon's assault of a peace officer acquittal. Because Shannon argues that he should be allowed to introduce evidence of both of his acquittals if I allow evidence of his criminal charges and conviction, I will address both of the acquittals together.

incident." (citing *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995))). In evaluating the reasonableness of an official's conduct, a court must pay "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011) (citing *Graham*, 490 U.S. at 396).

I first address Shannon's argument that not even the charges filed against him on September 13, 2006, are admissible. The Supreme Court has instructed that "the severity of the crime at issue" is relevant to determining the reasonableness of a police officer's conduct. *Graham*, 490 U.S. at 396. The arresting charges against the plaintiff are often the appropriate basis for determining "the severity of the crime at issue." *See, e.g., Cook v. City of Bella Villa,* 582 F.3d 840, 859 (8th Cir. 2009) (Shepherd, J., dissenting) (evaluating the severity of the offense by examining the crimes with which the defendant officer charged the plaintiff—resisting arrest and interfering with an officer, which were eventually dismissed—and analyzing whether the plaintiff "meaningfully engaged in th[ese] offense[s]"); *Davis v. City of Albia*, 434 F. Supp. 2d 692, 706 (S.D. Iowa 2006) (finding under *Graham* that, if the case had gone to trial, the plaintiff's simple misdemeanor charges for interference with official acts and assault of a peace officer might have indicated to the jury that the "severity of the crime" was low, though the court ultimately determined that the claim was barred by qualified immunity); *see also Solomon v. Auburn Hills Police Dep't,* 389 F.3d 167, 174 (6th Cir. 2004) (arrest for trespass was the basis for determining "the severity of the crime at issue"). *But see Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (evaluating severity of the crime, where the plaintiff was charged with both an open bottle violation and obstruction of legal process, on the

officer's "susp[icion] that [the plaintiff] had committed an open bottle violation" and finding that the plaintiff's "conduct did not amount to a severe or violent crime").

Shannon, citing a case from the Second Circuit Court of Appeals, argues that only evidence of Shannon's alleged "suspected intoxication and assault on a peace officer" is relevant to "why Koehler came to use force on Shannon," *see* Plaintiff's Resistance To Defendants' Motions in Limine at 2-3 (docket no. 104-1), and he maintains that the charges for which he was arrested are not admissible. *See Davis v. Rodriguez*, 364 F.3d 424, 435-36 (2d Cir. 2004) (determining that "cross-examination . . . concerning the charges [the officer] had in mind when he first tried to arrest [the plaintiff]" was "directly relevant to the excessive force claim because the reasonableness of the force used was partly dependent on the crime in question"). I do not read *Davis* to suggest that the *only* charges that are relevant to determining "the severity of the crime at issue" are those "[the officer] had in mind when he first tried to arrest [the plaintiff]." *See id. Graham* instructs that reasonableness must be assessed "at the moment" the officer uses force. *See Graham*, 490 U.S. at 396. Here, Shannon alleges that Koehler used excessive force both when taking him to the floor and in cuffing him. Thus, "the severity of the crime at issue" is judged not only when Koehler first tried to take Shannon down, but also during the process of cuffing him. The charges against Shannon, as listed on the Sioux City Incident Reports, *see* Defendants' Exhibit 1003, and his arrest and booking report, *see* Exhibit 1 to Plaintiff's Resistance To Defendants' Motions In Limine at 8 (docket no. 104-2), are Assault-Serious-Police Officer, Interference with Official Act, and Public Intoxication. These are the crimes for which Koehler arrested Shannon, not charges added after the fact by a prosecutor. All of the charges relate to Shannon's alleged conduct before and during Koehler's use of force. Therefore, they are relevant to determining whether Koehler's use

of force was reasonable because they demonstrate the severity of the crime at issue during the arrest. Thus, the names of the charges are admissible.

Turning to the admissibility of Shannon's conviction, the Supreme Court has also identified "whether [the suspect] is actively resisting arrest" as a relevant factor in determining the reasonableness of an officer's use of force. *Graham*, 490 U.S. at 396. The Eighth Circuit Court of Appeals has held that a conviction for a crime, such as interference with official acts or assault of an official, which occurs during an alleged use of excessive force, is relevant evidence in determining the reasonableness of the official's conduct. *See Grant v. Farnsworth*, 869 F.2d 1149, 1151 (8th Cir. 1989) (finding, where an Iowa man was convicted of interference with official acts and then sued for excessive force arising from the same incident, that "[e]vidence of Grant's conviction for interference with official acts is relevant to this action because it precludes the relitigation of the facts and issues that were necessary for the state court jury to convict Grant." (citing *Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir. 1979))); *see also Cummings v. Malone*, 995 F.2d 817, 825 (8th Cir. 1993) (concluding, where plaintiff was convicted under Missouri law of assaulting an official and later sued that official for excessive force arising from the same incident, that "refusing to allow appellants to introduce Cummings' prior conviction would improperly allow him to contest in this case a fact conclusively decided against him in the earlier criminal case." (citing *Grant*, 869 F.2d at 1151)). *But see Henderson v. Munn*, 439 F.3d 497, 500 (8th Cir. 2006) (noting, although the Eighth Circuit Court of Appeals did not reach this issue for lack of jurisdiction, that the district court had found that, under Arkansas law, the plaintiff was not estopped from arguing that he did not resist arrest in his subsequent § 1983 case, even after he was convicted of resisting arrest and obstructing governmental operations).

Based on *Grant*, 869 F.2d at 1151, and *Cummings*, 995 F.2d at 825, which are binding Eighth Circuit precedent, Shannon's conviction for interference with official acts is relevant to the determination of whether Koehler used excessive force. Judge McCormick, in finding Shannon guilty of interference with official acts, concluded, "Shannon knowingly resisted Officer Koehler in the officer's performance of the act of handcuffing the Defendant, which was within the scope of authority of that officer . . . ." Defendants' Exhibit 1012. As long as Shannon maintains that Koehler used excessive force both in performing a leg sweep *and* in cuffing Shannon, Shannon's conviction for interference with official acts is relevant and admissible in this case because it provides evidence of how much force was reasonably necessary to cuff him.[10]

---

[10] Though the Eighth Circuit Court of Appeals, in reaching its conclusions, did not discuss the Supreme Court's decision in *Allen v. McCurry,* 449 U.S. 90 (1980), regarding the preclusive effect of state criminal convictions in § 1983 cases, the holdings in *Grant* and *Cummings* appear consistent with an analysis under *Allen*. In *Allen*, the Court determined, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgment emerged would do so." *Id.* at 96; *see also Calusinski v. Kruger*, 24 F.3d 931, 934 (7th Cir. 1994) (applying *Allen* in a subsequent excessive force case, plaintiff's conviction for resisting arrest was properly admitted because, under Illinois law, the conviction was "admissible in a civil proceeding as *prima facie* evidence of the facts upon which the conviction [was] based." (quoting *Brown v. Green*, 738 F.2d 202, 206 (7th Cir. 1984))).

Thus, the question under *Allen* is whether Iowa courts would admit Shannon's conviction for interference with official acts as evidence in a subsequent civil case. The Eighth Circuit Court of Appeals in *Grant*, though it did not discuss *Allen* or Iowa law, concluded that the plaintiff's Iowa conviction for interference with official acts should be given preclusive effect. *Grant*, 869 F.2d at 1151. An analysis of Iowa law appears to confirm this conclusion. The Iowa Supreme Court, determining that a conviction for vehicular homicide should be afforded preclusive effect in a subsequent wrongful death case, concluded, "[I]n appropriate cases a criminal conviction may be preclusive in a later civil suit as to those issues that were previously litigated in the criminal proceeding."

(continued...)

24

[10](...continued)

*Dettman v. Kruckenberg*, 613 N.W.2d 238, 248 (Iowa 2000). The *Dettman* court also recited the standard under Iowa law to determine if issues of fact will be given preclusive effect:

> (1) the issue determined in the prior action is identical to the present issue; (2) the issue was raised and litigated in the prior action; (3) the issue was material and relevant to the disposition in the prior action; and (4) the determination made of the issue in the prior action was necessary and essential to that resulting judgment.

*Id.* at 244 (quoting *American Family Mut. Ins. Co. v. Allied Mut. Ins. Co.*, 562 N.W.2d 159, 163-64 (Iowa 1997)) (internal quotation marks omitted); *accord Plough By and Through Plough v. West Des Moines Community Sch. Dist.*, 70 F.3d 512, 516 (8th Cir. 1995) (citing *Yancy v. McDevitt*, 802 F.2d 1025, 1027-28 (8th Cir. 1986)).

Here, the requirements for issue preclusion are met. First, in both Shannon's criminal case and in this case, the issue of fact to be concluded is identical. In this case, a relevant consideration in determining the reasonableness of Koehler's use of force is whether Shannon resisted when Koehler attempted to cuff him. In Shannon's criminal case, Judge McCormick determined, "Shannon knowingly resisted Officer Koehler in the officer's performance of the act of handcuffing the Defendant, which was in the scope of authority of that officer . . . ." Defendants' Exhibit 1012. Second, the issue of whether Shannon resisted while being cuffed was raised and litigated in Shannon's bench trial. Third, whether Shannon resisted Koehler's attempts to handcuff him was material and relevant to the disposition of the prior action of interference with official acts. Fourth, and finally, the determination that Shannon resisted was necessary and essential to the conviction, as it is clear that Judge McCormick based his order on that finding.

Notably, the Iowa Supreme Court in *Dettman* wrote, "We will not show such lack of faith in the criminal judicial system to allow an issue fully and fairly litigated in a criminal trial to be completely relitigated in a civil trial." *Dettman*, 613 N.W.2d at 249 (citation and internal quotation marks omitted). Moreover, the court highlighted that while Iowa law does not permit convictions under the traffic code to be admitted as evidence in a civil case, *see* IOWA CODE § 321.489; *Dettman*, 613 N.W.2d at 245, the legislature has not created a similar provision for other parts of the criminal code: "if the legislature had intended that convictions under Iowa Code chapter 707 be inadmissible to prove an

(continued...)

Nevertheless, Shannon's argument under Rule 403 that the conviction is highly prejudicial and may confuse the jury is well taken. The conviction for interference with official acts only relates to Shannon's acts while Koehler cuffed him. It proves nothing about how Shannon acted before Koehler's leg sweep. The jury in this case could hear "interference with official acts" and conclude that Shannon interfered with all of Koehler's official acts on September 13, 2006. Additionally, the parties must avoid a mini-trial on Shannon's criminal conviction that will waste the jury's and the court's time. I have determined that the best way to address the serious potential for prejudice, confusion, and wasting of time is with a limiting instruction. *See* FED. R. EVID. 403, Advisory Committee Notes (explaining that a court should consider whether a limiting instruction could be effective when determining whether unfair prejudice will result). Thus, the conviction is admissible but only with a limiting instruction.

Because Shannon's charges and convictions are admissible, I turn now to whether his acquittals are admissible. The general rule is that an acquittal is not admissible to prove facts upon which the acquittal was based:

---

[10](…continued)
underlying fact in the civil suit, it easily could and presumably would have so indicated." *See Dettman*, 613 N.W.2d at 249. Shannon was convicted under Iowa Code § 719.1, which likewise provides no protection against use in civil proceedings. *See* IOWA CODE § 719.1. Therefore, I conclude that Iowa law supports the Eighth Circuit Court of Appeals's conclusion in *Grant*. *See Grant*, 869 F.2d at 1151; *see also Graack v. Borough of Nazareth*, 852 F. Supp. 370, 371-72 (E.D. Pa. 1994) (concluding that the plaintiff's convictions for disorderly conduct and resisting arrest arising from the alleged excessive force incident were admissible in the subsequent § 1983 case because, applying *Allen*, the convictions would have been admissible under Pennsylvania law, which allows convictions, other than traffic offenses, to be used as evidence in subsequent civil proceedings).

There are two primary reasons why a judgment of acquittal is not generally admissible to rebut inferences that may be drawn from evidence that was the basis of a previous trial. First, judgments of acquittal are hearsay. Second, judgments of acquittal are not generally relevant, because they do not prove innocence; they simply show that the government did not meet its burden of proving guilt beyond a reasonable doubt.

*United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003) (quoting *Prince v. Lockhart*, 971 F.2d 118, 122 (8th Cir. 1992)).

In a § 1983 case for excessive force and arrest without probable cause, the Eighth Circuit Court of Appeals affirmed the district court's exclusion of the plaintiff's acquittal on the charge for which he was arrested, despite the plaintiff's assertion that evidence of the acquittal was necessary "to prevent the jury's assumption of a conviction" and to support his argument that the police had no probable cause to arrest him.[11] *Bey v. Hamon*, 977 F.2d 586, 1992 WL 279284 at *1-2 (8th Cir. Oct. 14, 1992) (unpublished table decision) (finding that the acquittal had no probative value to show that the police did not have probable cause and that the probative value of the acquittal was substantially

---

[11] Similarly, the Eighth Circuit Court of Appeals has ruled that the dismissal of charges for want of prosecution is not relevant to a subsequent § 1983 case. *See Donald v. Rast*, 927 F.2d 379, 381 (8th Cir. 1991) (affirming district court's decision to exclude evidence of dismissal of DUI charges in § 1983 case for arrest without probable cause and falsification of a breathalyzer test). Nevertheless, in a recent § 1983 case for an unlawful search warrant, the United States District Court for the Eastern District of Missouri limited *Donald*'s application to dismissals *for want of prosecution* and noted that there is no *per se* prohibition on the admissibility of a dismissal of criminal charges in subsequent § 1983 cases. *Ladd v. Pickering*, ___ F. Supp. 2d ___, 2011 WL 1344569 at *3 & n.1 (E.D. Mo. Mar. 30, 2011) (finding, on motion for judgment as a matter of law or a new trial, that court's decision to admit evidence that the criminal charge against the plaintiff was dismissed was either not error or harmless error because the dismissal was only briefly mentioned, and the judge issued a limiting instruction).

outweighed by its prejudicial effect). When the plaintiff in *Bey* argued that the acquittal's prejudicial effect could have been remedied with a limiting instruction, the Eighth Circuit Court of Appeals dismissed his argument because he had not requested an instruction from the trial court, and it concluded that the trial court's exclusion of the acquittal was not plain error. *Id*. at *2.

*Bey* thus appears to leave the door open for the admission of evidence of an acquittal when paired with a well-crafted limiting instruction from the court. Indeed, where a limiting instruction is used to guide the jury, courts have determined that evidence of an acquittal may be proper for purposes other than to prove facts upon which the acquittal was based. *See, e.g., Sloman v. Tadlock*, 21 F.3d 1462, 1471 (9th Cir. 1994) (recognizing general rule excluding evidence of acquittals but finding admission of evidence of acquittal, where limited by jury instruction, appropriate in § 1983 case for limited purpose of demonstrating that the plaintiff did not have a vindictive motive for pursuing his civil rights lawsuit); *Borunda v. Richmond*, 885 F.2d 1384, 1387-89 (9th Cir. 1988) (recognizing general rule excluding acquittals but finding evidence of acquittal appropriate in § 1983 false arrest case for limited purpose of calculation of damages, as plaintiffs had paid attorneys to defend them in the criminal case that arose from the false arrest, but emphasizing need for proper limiting instructions).

In a recent excessive force case that merits close review, the Eighth Circuit Court of Appeals suggested that where one party interjects evidence of a criminal proceeding in a subsequent § 1983 case, evidence of an acquittal may be permitted to a limited extent if the other party would otherwise be unfairly prejudiced. *See Gill*, 546 F.3d at 564. The plaintiff in *Gill* was charged with disorderly conduct and obstructing legal process arising from an excessive force incident, and a jury acquitted him of both charges. *Id*. at 563. The defendant officer suggested during the § 1983 trial that the plaintiff had not called him

as a witness in the plaintiff's criminal case because the defendant had no knowledge of the incident. *Id.* at 564. The district court judge then permitted testimony that the plaintiff was found not guilty but also carefully instructed the jury:

> You have heard testimony in this trial that the plaintiff . . . was found not guilty at a prior criminal trial. Keep in mind, however, that you must decide this case solely on the evidence presented to you in this trial. The fact of a previous criminal trial should have no bearing on your decision in this case.

*Id.* (citing district court's jury instructions). On appeal, the Eighth Circuit Court of Appeals affirmed the district court's decision and determined, "The district court properly concluded it would be unfairly prejudicial to present evidence of a criminal proceeding without telling the jury Gill [,the plaintiff,] was acquitted." *Id.* Importantly, the court did not express concern in *Gill* that evidence of the plaintiff's "not guilty" verdict was hearsay.

Similarly, Shannon would be unfairly prejudiced if not permitted to clarify that he was found not guilty on the charges of assault of a peace officer and public intoxication. The defendants, by presenting evidence of Shannon's conviction for interference with official acts, will introduce the criminal proceedings that arose from the September 13, 2006, incident into this trial. The strongest argument against the application of *Gill* here is that Shannon's charge of interference with official acts was tried separately from that of assault of a peace officer. Thus, it could be argued that, unlike in *Gill*, the mere mention in this case of Shannon's interference with official acts trial and conviction would not create an unfair inference that Shannon was found guilty on the assault of a peace officer charge. Despite these differences, I find that the same core risk of prejudice and confusion exists here as it did in *Gill*. The jury will be aware of all three charges against Shannon from the incident reports that the defendants intend to introduce. The jury will know that Shannon was convicted of interference with official acts but will be left wondering about

the result of the other two charges. The defendants have offered to redact any evidence of the assault of a peace officer charge from the police reports and have stated that they will not otherwise mention the charge. That solution is not acceptable because the severity of the crime is relevant in assessing the reasonableness of Koehler's conduct. *See Graham*, 490 U.S. at 396. Therefore, the jurors should know for what crimes Koehler arrested Shannon.

I conclude that Shannon may testify that he was acquitted on the charges of assault of a peace officer and public intoxication. At the same time, because there is some risk of prejudice and confusion about the meaning of Shannon's acquittals, I will only allow evidence of Shannon's acquittals with a limiting instruction.

I find that Shannon's testimony that he was found not guilty is not barred by the hearsay rule, both based on the Eighth Circuit Court of Appeals's lack of concern about hearsay in *Gill* and because the record of a not guilty verdict would qualify as a public record. *See* FED. R. EVID. 803(8); *see also Jimenez v. Sambrano*, No. 04cv1833-L(PCL), 2010 WL 55307, at *1 (S.D. Cal. Jan. 6. 2010) (finding that the plaintiff's testimony in an excessive force case that he was "not convicted of any crime arising from the incident" was admissible under Rule 803(8)); *cf. United States v. Nguyen*, 465 F.3d 1128, 1132 (9th Cir. 2006) (concluding that records of convictions for misdemeanors, though not admissible under Rule 803(22), are admissible as public records under Rule 803(8) for limited purposes) (citing *United States v. Loera*, 923 F.2d 725, 730 (9th Cir. 1991))).

Therefore, this portion of the defendants' motion in limine is denied. Shannon will be permitted to testify that he was found not guilty on the charges of assault of a peace officer and public intoxication, subject to a limiting instruction. However, the defendants will be permitted to introduce evidence of Shannon's charges from September 13, 2006,

and his conviction for interference with official acts, subject to limiting instruction. My proposed limiting instruction is attached *infra* in the Appendix.

### 2. Prior excessive force claims against Koehler

The defendants seek to exclude any excessive force complaints filed by other individuals against Koehler. First, they contend that the complaints are irrelevant to the reasonableness standard in excessive force cases, which focuses on the officer's conduct at the time of the incident. Second, they argue under Rule 404(b) that the complaints are inadmissible prior acts evidence to show that Koehler has a propensity to use excessive force. Third, the defendants assert that the complaints should be excluded as unfairly prejudicial under Rule 403.

Shannon argues in response that he should be permitted to question Koehler as to other excessive force claims against him. Shannon contends that the complaints are admissible to show Koehler's motive and intent to use force against Shannon and to demonstrate that Koehler disregards his training on the use of force. In reply, the defendants assert that Shannon's arguments as to motive and intent are conclusory attempts to shoehorn the prior complaints into permissible "other purposes" under Rule 404(b).

It is unclear how many excessive force complaints have been lodged against Koehler. In their initial Memorandum In Support of Defendants' Motions in Limine, the defendants refer to two complaints of excessive force before the September 13, 2006, incident and three after. Shannon responds that the defendants had previously only disclosed two of the incidents, but requests that I permit him to question Koehler about any and all incidents. The defendants, in their reply, state that actually only two of the complaints were for excessive force (one in July 2005 and one in November 2006), and the remaining three did not involve excessive force. The defendants have not provided me with any of the complaints to review. Shannon has referred me to two complaints attached

to his Resistance to Defendants' Motion for Summary Judgment. Thus, the only evidence before me, at this time, is an investigation of a July 2, 2005, incident involving Koehler, *see* Plaintiff's Exhibit 1049, Bates numbers 954-75 (docket no. 42-10); and an investigation of a November 3, 2006, incident involving Koehler, *see* Plaintiff's Exhibit 1059, Bates numbers 1203-26 (docket no. 42-13). In the July 2, 2005, incident, Koehler asked a suspect to stop and, when he did not, grabbed his wrist. When the suspect attempted to get into a vehicle, Koehler feared he was attempting to get a weapon, and Koehler attempted to do a "cut-down" to take the suspect to the ground but instead lost his balance. Both Koehler and the suspect ended up on the ground. Koehler then asked another officer to tase the suspect so that Koehler could regain control. In the November 3, 2006, incident, it does not appear that Koehler actually was involved in the application of force to any individual but was present at the scene, along with several other officers.

Rule 404(b) instructs:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

FED. R. EVID. 404(b). When admissible for "other purposes," evidence of other crimes, wrongs, or acts must also be "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect;[12]

---

[12] The Supreme Court, in a case predating *Batiste-Davis*, has indicated that evidence of other crimes, wrongs, or acts, is subject to the typical Rule 403 standard, not the "higher in probative value than in prejudicial effect" standard quoted in *Batiste-Davis* and several other Eighth Circuit Court of Appeals's cases. *See Huddleston v. United*
(continued...)

and (4) similar in kind and close in time to the [event at issue]." *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008) (quoting *Berry v. Oswalt*, 143 F.3d 1127, 1132 (8th Cir. 1998)) (internal quotation marks omitted); *accord United States v. Aranda*, 963 F.2d 211, 215 (8th Cir. 1992); *United States v. Campbell*, 937 F.2d 404, 406 (8th Cir. 1991)).

The complaints are classic examples of "other crimes, wrongs, or acts" evidence prohibited by Rule 404(b). They serve to show that Koehler has a propensity to use excessive force and, in conformity with that propensity, used excessive force during his encounter with Shannon. Shannon has not presented any convincing arguments as to why the complaints are admissible for "other purposes" under Rule 404(b). His argument consists of one sentence: "the prior complaints are proper evidence under Fed. R. Evid. 404(b) since they go to Koehler's motivation and intent to use force against Shannon and they go to show that Koehler disregards and disregarded his training on the use of force." Plaintiff's Resistance To Defendants' Motions in Limine at 8 (docket no. 104-1).

Shannon's contention that the complaints are admissible to show that Koehler disregards his training is nothing more than an attempt to prove Koehler's character in order to show action in conformity therewith. Proof that Koehler has disregarded his training at other times suggests that he also disregarded his training during his encounter with Shannon. Shannon's argument, that the complaints show Koehler's propensity to disregard his training, is prohibited under Rule 404(b). *See* Fed. R. Evid. 404(b).

As far as proof of motive and intent, Shannon does not explain the probative value of the complaints to any issue in this case, much less how they prove motive or intent.

---

[12](…continued)
*States*, 485 U.S. 681, 691 (1988). This apparent discrepancy does not matter in this case; as discussed below, the disputed evidence is inadmissible under either standard.

Other acts evidence must be "similar in kind and close in time to the [event at issue]." *Batiste-Davis*, 526 F.3d at 380. The July 2, 2005, incident is at least somewhat similar to this case; in both instances Koehler actually engaged in physical contact with a suspect and performed a cut-down or take-down. Even so, Shannon fails to indicate how this incident shows motive or intent. In the November 3, 2006, incident, Koehler apparently was just present at the scene. Thus, this incident is not similar enough to what happened here to have probative value for any purpose in this case.

In any event, motive and intent are not at issue in this case.[13] With regard to Shannon's § 1983 claim, the issue in an excessive force case is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted); *accord Robinson v. City of St. Charles*, 972 F.2d 974, 976 (8th Cir. 1992). An officer's ill will towards a plaintiff is generally irrelevant to an excessive force claim because "evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force . . . ." *Graham*, 490 U.S. at 397; *Robinson*, 972 F.2d at 976 (affirming exclusion of evidence of prior bad acts in officers' personnel files). Indeed, the Eighth Circuit Court of Appeals reversed a district court's decision to admit evidence of a prior incident involving an officer to show motive, intent, plan, or mode of operation, finding the incident too dissimilar and determining, in any event, that motive and intent are not relevant in an excessive force case. *Morgan v. City of Marmaduke*, 958 F.2d 207, 211-12 & n.2 (8th Cir. 1992) (citing *Graham*, 490 U.S. at 397). Thus, Shannon

---

[13] It is possible that evidence of motive and intent would be relevant for purposes of punitive damages, but Shannon has not made this argument.

cannot use the July 2, 2005, complaint of excessive force against Koehler to show motive or intent for his § 1983 claim.

Shannon cites *Lewis v. City of Albany Police Dep't*, 547 F. Supp. 2d 191, 199-201 (N.D.N.Y. 2008), as his sole authority, but that case does not support his argument. In *Lewis*, the officer argued that he did not participate in the arrest; thus, the court admitted prior similar complaints against him to show identity. In this case, there is no question of Koehler's identity—he admits that he used force on Shannon but argues that his force was reasonable. Additionally, the plaintiff in *Lewis* alleged both excessive force and an equal protection violation, arguing that the officers targeted him because he was African-American. The court therefore admitted complaints by other African-American suspects to show the officer's discriminatory motive and intent to use force on the plaintiff. Here, there is no allegation of discriminatory motive under the equal protection clause.

Likewise, motive is not an issue in Shannon's state assault and battery claims, and intent is not in dispute. Where motive is not an element of state assault or battery claims, proof of motive is not relevant and thus not admissible. *See Clark v. Martinez*, 295 F.3d 809, 814 & n.4 (8th Cir. 2002) (affirming district court's exclusion of evidence of prior excessive force incident to show motive where motive was not an element of Nebraska assault or battery law; and finding, though motive might have been relevant to punitive damages, that plaintiff waived this argument on appeal). Motive is not relevant to Iowa's

definitions of assault and battery.[14]  Therefore, the July 2, 2005, complaint against Koehler is not admissible to show motive for Shannon's state assault and battery claims.

Because intent is not in dispute in this case, prior complaints are not admissible to show intent. "[A]n issue for which an item of evidence is offered as proof need not be in dispute for the item to be admissible . . . ." *Id.* at 813 (citing *Old Chief v. United States*, 519 U.S. 172, 179 (1997)). Nevertheless, "the probative value of an item of evidence is calculated with respect to the other evidence available to prove the same point." *Id.* (citing *Old Chief*, 519 U.S. at 184). The Eighth Circuit Court of Appeals in *Clark* also affirmed the district court's exclusion of a prior excessive force incident offered to show intent where intent was not in dispute for the plaintiff's state assault and battery claims. *Id.* at 813. While intent[15] is an element of both assault and battery under Iowa law, Koehler does not dispute that he intended to make contact with Shannon and apply force. Rather, he disputes whether his force was unreasonable. Considering that intent is not disputed and that Shannon has not explained how the July 2, 2005, complaint against Koehler proves intent, the probative value of the complaint here to show intent is low. If subject to the typical Rule 403 balancing test, the low probative value of the prior complaint is

---

[14] Under Iowa law, an assault is "an act intended to put another in fear of physical pain or injury; (2) an act intended to put another in fear of physical contact which a reasonable person would deem insulting or offensive; and the victim reasonably believes that the act may be carried out immediately." *Fakorzi v. Dillard's, Inc.*, 252 F. Supp. 2d 819, 834 (S.D. Iowa 2003) (quoting Iowa Civil Jury Instruction 1900.2). A battery occurs "when a person intentionally does: 1. An act resulting in bodily contact causing physical pain or injury. 2. An act results in bodily contact which a reasonable person would deem insulting or offensive." *Id.* (quoting Iowa Civil Jury Instruction 1900.4).

[15] "Intent means doing something on purpose as opposed to accidentally. . . . You may find that if a person does an act on purpose, the person also intended the natural results of the act." *Id.* (quoting Iowa Civil Jury Instruction 1900.5).

substantially outweighed by the danger of unfair prejudice to Koehler, *see* FED. R. EVID. 403, as the jury could interpret the evidence as showing Koehler's propensity to use excessive force, rather than showing intent. Under the *Batiste-Davis* standard of "higher in probative value than in prejudicial effect," which tips more towards exclusion, the evidence would likewise be inadmissible. *See Batiste-Davis*, 526 F.3d at 380. Thus, the July 2, 2005, complaint is not admissible to show intent in Shannon's state assault and battery claims.

Therefore, this portion of the defendants' motion in limine is granted in part and denied in part. The defendants request that I bar evidence of any other excessive force complaints claims against Koehler, but it is not clear that the defendants have identified all of the excessive force claims against Koehler for my review. Thus, I will not bar evidence of *all* other excessive force claims against Koehler in case others exist, but I will decide what I can at this juncture. The November 3, 2006, incident is not admissible for any purpose because it is too different from this case. The July 2, 2005, incident is not admissible to show motive, intent, or that Koehler disregards his training, and not otherwise admissible unless Shannon shows some permissible other purpose under Rule 404(b).

### 3.     *Motor vehicle accident*

The defendants request that I bar any reference to an incident on October 26, 2005, in which Koehler responded to a motor vehicle accident involving Shannon's wife. Apparently, a dispute arose between Shannon and Koehler when Shannon arrived, and the defendants anticipate that Shannon may attempt to introduce evidence of this incident to show that Koehler held a grudge against him. The defendants argue that any evidence of Koehler's subjective intentions is irrelevant to this case. Shannon responds that he does not plan to introduce evidence of what occurred during the incident unless the defendants

do. Therefore, because both parties agree not to introduce this evidence, this portion of the defendants' motion in limine is granted by agreement.

### 4. *El Forastero investigation*

The defendants move to exclude any evidence of an investigation of the El Forastero motorcycle gang in 1992. Shannon worked on the investigation as part of his job for the State of Iowa Division of Narcotics, and he apparently was involved in making sure that the investigation was kept secret, even from the Sioux City Police Department. Shannon's deposition indicates that he believes that the Sioux City Police Department may hold a grudge against him for his involvement. Defendants' Exhibit 1, Timothy Shannon's Deposition at pp. 31-36 (docket no. 98-1). Shannon responds that he does not plan to introduce any evidence of the El Forastero incident. Therefore, this portion of the defendants' motion in limine is granted by agreement.

### 5. *Offers of compromise and "Golden Rule" arguments*

The defendants, citing Iowa Rule of Evidence 408, move to exclude any offers of compromise. Shannon states that he will abide by Federal Rule of Evidence 408 and that no order barring offers of compromise is necessary. The defendants also argue that under Iowa law, any Golden Rule arguments on liability or damages are inadmissible. Shannon responds that he does not intend to make any Golden Rule arguments, but he also argues that under Iowa law on Golden Rule arguments, the defendants may not present evidence that a finding for Shannon would increase taxes.

To clarify for the purposes of the upcoming trial, I note for the parties that the Federal Rules of Evidence, not the Iowa Rules, govern both the federal and state claims in this case. This court has federal question jurisdiction over the § 1983 claim and supplemental jurisdiction over the state assault and battery claims because they arise from the same "common nucleus of operative fact" as the § 1983 claim. *See City of Chicago*

*v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)) (internal quotation marks omitted); *see also* 28 U.S.C. § 1367(a). When a district court exercises supplemental jurisdiction over a state claim, the *Erie* choice of law analysis applies just as it would in a diversity case: "Federal courts considering non-federal questions (in diversity actions, or, as here, when a state claim is heard under pendent jurisdiction) apply federal rules of procedure, and follow state law to resolve issues of substance." *Sayre v. Musicland Group, Inc.*, 850 F.2d 350, 352 (8th Cir. 1988) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Bank of St. Louis v. Morrissey*, 597 F.2d 1131, 1134-35 (8th Cir.1979); 1A MOORE'S FEDERAL PRACTICE ¶ 0.305[3], at 3050-51 (1987)). Therefore, in this case, Iowa substantive law governs the assault and battery claims, but federal law, including the Federal Rules of Evidence, dictates procedure for both the federal and state claims. *See Potts v. Benjamin*, 882 F.2d 1320, 1324 (8th Cir. 1989); *Adams v. Fuqua Indus., Inc.*, 820 F.2d 271, 273 (8th Cir. 1987). Offers of compromise are inadmissible under Federal Rule of Evidence 408. FED R. EVID. 408. Therefore, this portion of the defendants' motion in limine is granted, and both parties are barred from referring to offers of compromise.

Additionally, neither party may offer "Golden Rule" arguments—for example, asking the jurors to step into the shoes of the parties or inviting jurors to consider how a verdict might affect them (or their taxes). *See, e.g.*, *Niver v. Travelers Indem. Co. of Ill.*, 433 F. Supp. 2d 968, 998 (N.D. Iowa 2006). Again, federal law governs this question of admissibility of evidence. Although no Federal Rule of Evidence explicitly speaks to Golden Rule arguments, "[s]uch an argument is universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *See Lovett ex rel. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000) (citation and internal quotation marks

omitted); *accord Dole v. USA Waste Servs., Inc.*, 100 F.3d 1384, 1388 (8th Cir.1996)). Because Golden Rule arguments are so highly prejudicial and have little probative value, I will exclude them under Rule 403. Thus, this portion of the defendants' motion in limine is granted, and both parties are barred from making such arguments.

### 6.    *Excessive force incident reports*

The defendants seek to exclude any evidence of excessive force complaints against Sioux City police officers and any departmental investigations that occurred after September 13, 2006, the date of the incident in question. The defendants argue that because these complaints and investigations occurred after the incident, they have no relevance to Shannon's claim of unconstitutional custom or practice against the City of Sioux City or Joseph C. Frisbie. Shannon responds that this evidence relates solely to the *Monell* claim and is not properly before the court at this time because of the bifurcation of this case. I agree. The defendants may raise these issues if the case proceeds against the City of Sioux City and Joseph C. Frisbie. Therefore, this portion of the defendants' motion in limine is denied as premature.

### 7.    *Bifurcation*

The defendants argue that Shannon should be precluded from offering evidence of his *Monell* and *respondeat superior* claims during his trial against Koehler. Shannon represents that he does not intend to offer any such evidence and argues that no additional order is necessary because I already ordered the parties not to "refer, directly or indirectly, to the discussion of bifurcation issues." Memorandum Opinion And Order at 37 (docket no. 91). Both parties agree not to offer any evidence of the *Monell* and *respondeat superior* claims during Officer Koehler's trial. Thus, this portion of the defendants' motion is granted by agreement.

## B. Plaintiff's Second Motion In Limine

### 1. Shannon's OWI conviction

Shannon seeks to bar evidence of his February 24, 2011, felony Operating While Intoxicated, Third Offense conviction. Specifically, he anticipates that the defendants will introduce his sentencing order. *See* Defendants' Exhibit 1011. Shannon first argues that his 2011 conviction is irrelevant to this case because the reasonableness inquiry in excessive force cases focuses on the officer's knowledge at the time of the incident, not on incidents that occur after the fact. Second, Shannon contends that the conviction is inadmissible character evidence to show his propensity for intoxicated recklessness. Third, Shannon argues that I should not admit the conviction under 609(a) because an OWI conviction is not particularly probative of credibility and because admitting the conviction will be highly prejudicial to Shannon. Shannon asserts that the conviction will lead the jury to believe that he is a habitual drunkard who "had it coming." *See* Shannon's Second Motion in Limine at 4 (docket no. 119).

The defendants argue in response that they are permitted to impeach Shannon with his felony OWI conviction under Rule 609(a). They maintain that Shannon's credibility is central in this case, as his claim rests largely on his own testimony. Consequently, they assert that any indication of his credibility, including this conviction, is essential to their defense. The defendants argue that Rule 403 does not bar admission because the probative value of the OWI conviction is not substantially outweighed by its prejudicial effect to Shannon. They contend that any felony conviction is at least somewhat probative of credibility. They further argue that the similarity between the OWI conviction and Shannon's intoxicated condition on September 13, 2006, the date of the arrest at issue in this case, is not prejudicial enough to render the conviction inadmissible. If I find the conviction to be unfairly prejudicial, the defendants request that I at least permit them to

question Shannon about his "felony conviction," even if the nature of the crime itself is inadmissible.

Rule 609(a)(1) provides in pertinent part:

> For the purpose of attacking the character for truthfulness of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused . . . .

FED. R. EVID 609(a)(1).  Shannon's 2011 conviction for Operating While Intoxicated, Third Offense, is a class D felony, *see* Defendants' Exhibit 1011, punishable by a prison sentence up to five years,[16] and thus falls squarely within 609(a)(1).

Still, the question remains whether I should exclude the conviction, or at least its nature, under Rule 403.  In the case of an accused in a criminal trial, Rule 609(a)(1) modifies the language of the Rule 403 balancing test to tip the scales in favor of exclusion. FED. R. EVID. 609(a).  In contrast, where, as here, the witness is not an accused, evidence of a conviction is subject to the standard Rule 403 test, which only excludes evidence if "its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403.  "Evidence is unfairly prejudicial in the Rule 403 sense not simply because it hurts a party's case; rather, evidence is unfairly prejudicial when it would influence the jury to decide the case on an improper basis." *Cummings*, 995 F.2d at 824 (citations omitted).  Regarding the probative value of a felony conviction, Rule 609 reflects the "proposition that one who has transgressed society's norms by committing a felony is less

---

[16] IOWA CODE § 321J.2.

likely than most to be deterred from lying under oath." *Id.* at 826 (citing *Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir.1987)); *accord United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005) ("Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully."). The Eighth Circuit Court of Appeals has indicated that district courts should attribute more probative value to a conviction when a case largely turns on a witness's credibility. *Cummings*, 995 F.2d at 825-26 (reversing district court's decision in an excessive force case to exclude the plaintiff's prior felony convictions where the plaintiff's case turned on his own testimony and where the convictions would have contradicted the plaintiff's testimony). As far as the specific nature of a felony conviction, because "felony" includes a wide array of offenses, "most jurors . . . need to know the specific crime in order to evaluate its effect on credibility." *Id.* at 826. *But see Foulk v. Charrier*, 262 F.3d 687, 699-700 (8th Cir. 2001) (distinguishing *Cummings*, where the plaintiff's convictions contradicted his testimony, and affirming the district court's exclusion in an excessive force case of the names of the plaintiff's prior convictions of rape and sodomy as unfairly prejudicial under Rules 609(a) and 403).

Here, the probative value of the nature of Shannon's felony OWI conviction is substantially outweighed by the danger of unfair prejudice to him. Shannon's felony conviction certainly has probative value for his credibility under Rule 609(a), especially because his testimony is so important to proving his case, just as in *Cummings*. *See Cummings*, 995 F.2d at 826. Indeed, I denied summary judgment for the defendants because of the many genuine issues of material fact where Shannon's version of events differs from that of the defendants. *Shannon v. Koehler*, 673 F. Supp. 2d 758, 784 (N.D. Iowa 2009). However, although Shannon's case largely turns on his own testimony, the probative value of his conviction for his credibility is less substantial here than in

*Cummings*. In *Cummings*, the plaintiff's convictions were doubly probative for his credibility because they were admissible both under Rule 609(a) and to contradict his trial testimony. *See Cummings*, 995 F.2d at 825-26. Shannon's conviction falls within Rule 609(a), but it lacks the extra layer of probative value present in *Cummings*, as there is no indication here that Shannon's 2011 conviction, which occurred five years after the events in this case, will contradict his trial testimony. Additionally, Shannon's OWI conviction occurred after his deposition on December 18, 2008. *See* Timothy Shannon's Deposition at 1, Exhibit 1 to Defendants' Motions In Limine (docket no. 98-1). Shannon's 2011 conviction has no probative value for his credibility in his deposition in 2008, and it is Shannon's deposition that will effectively control his trial testimony through the possibility of impeachment. Therefore, his conviction offers even less probative value for his credibility at trial.

Moreover, admitting the nature of the OWI conviction would be unfairly prejudicial to Shannon. The name of the offense, "Operating While Intoxicated, 3rd offense," *see* Defendants' Exhibit 1011, indicates a pattern and propensity for dangerous behavior while intoxicated. The jury, in their task of evaluating the reasonableness of Koehler's conduct, may consider "whether the suspect poses an immediate threat to the safety of the officers or others." *See Graham*, 490 U.S. at 396. The jury will already know that Shannon was intoxicated during his encounter with Koehler on September 13, 2006, because the parties have stipulated to that fact. However, when presented with Shannon's 2011 "Operating While Intoxicated, 3rd offense" conviction, the jury could assume that, in conformity with his character, Shannon was not only intoxicated on September 13, 2006, but also was acting dangerously and presented a threat to those around him. The risk of unfair prejudice stemming from the "3rd offense" component of the conviction substantially outweighs any additional probative value it could offer for Shannon's credibility.

Therefore, the defendants may only refer to Shannon's conviction as "Operating While Intoxicated" and may not refer, directly or indirectly, to the fact that it was his third offense. Counsel will be permitted to ask Shannon whether he has been convicted of the felony "Operating While Intoxicated," when it occurred, and the length of the sentence imposed. *See, e.g., Foulk*, 262 F.3d at 699 (affirming district court's decision to exclude the nature of the offense but to allow counsel to show that the plaintiff had been convicted of two felonies, the length of the sentence imposed, and how long he had been incarcerated). Evidence of Shannon's OWI conviction, however, will be subject to a limiting instruction, which will indicate to the jury that the conviction is only admissible to impeach Shannon's credibility and not for any other purpose.

As far as Shannon's argument that the conviction is not relevant to the reasonableness inquiry that controls this case, he is correct that this after-the-fact conviction is not admissible to show Koehler's knowledge at the time of the incident. Regarding Shannon's assertion that the conviction is improper character evidence, I agree. Nevertheless, while not admissible to show Koehler's knowledge at the time of the incident or Shannon's propensity for drunken recklessness, the conviction is admissible to impeach Shannon.

Therefore, this portion of Shannon's second motion in limine is granted in part and denied in part. The defendants may, subject to a limiting instruction, elicit from Shannon that he has been convicted of "Operating While Intoxicated," but they may not refer to the fact that it was his third offense.[17]

---

[17] The information contained in defendants' Exhibit 1011, Shannon's OWI Sentencing Order, is inadmissible. Therefore, this exhibit is stricken. In the highly unlikely event that Shannon denies his conviction, the defendants may offer an extremely

(continued...)

## 2.    *Cristina Navrkal's hearsay statements*

Shannon asks that I bar evidence of Cristina Navrkal's hearsay statements.  Shannon anticipates, based on the defendants' representations at the pre-trial conference, that Cristina Navrkal will be unavailable to testify at trial and that the defendants will rely on her deposition testimony.  Shannon is concerned that the defendants will attempt to introduce Exhibit 1003, the Sioux City Police Department reports, which contain Navrkal's statements; Exhibit 1007, Navrkal's taped statement from September 13, 2006; and Exhibit 1008, Navrkal's voluntary witness statement from September 13, 2006.  Shannon argues that Navrkal's taped statement and her voluntary witness statement are not admissible under Rule 803(5), the recorded recollection exception to the hearsay rule.  Shannon argues that neither the written witness statement nor the taped statement qualify as recorded recollections because the defendants cannot show that Navrkal ever had knowledge of what occurred on September 13, 2006, and because the statements do not accurately reflect her knowledge.  Shannon also asserts that the taped statement is inadmissible because it is not verbatim due to periodic breaks in the sound quality.

The defendants respond that Navrkal's taped statement and voluntary witness statement are admissible as recorded recollections under Rule 803(5).  The defendants assert that Navrkal laid the foundation at her deposition for these exhibits to be admissible as recorded recollections.  The defendants contend that neither party disputes that Navrkal has no present recollection of the September 13, 2006, incident.  They also maintain that she made the statements while her knowledge was fresh in her mind.  They argue that Navrkal confirmed at her deposition that both statements accurately reflected what she

---

[17](...continued)

redacted version of the sentencing order, only containing the information that Shannon was convicted of "Operating While Intoxicated."

knew at the time. The defendants also assert that a taped statement need not be verbatim to be admissible. Finally, the defendants contend that Navrkal's written and taped statements are consistent in their descriptions of events, indicating that the statements did accurately reflected Navrkal's knowledge at the time they were made.

Hearsay is "a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Both Navrkal's voluntary witness statement and her taped statement are out of court statements made by Navrkal, offered in evidence to prove the truth of the matter asserted. I have already ruled that Navrkal's taped statement is hearsay not subject to any exception,[18] but I will entertain the defendants' argument that the taped statement and the voluntary witness statement are recorded recollections. This case presents the somewhat unusual situation in which the declarant of the recorded recollection is unavailable to testify.[19] Navrkal's unavailability does not preclude the application of 803(5), as the "availability of [the] declarant [is] immaterial" for all Rule 803 exceptions. *See* FED R. EVID. 803. *But see Parker v. Reda*, 327 F.3d 211, 215 (2d Cir. 2003) ("Evidence of recorded recollection . . . is inadmissible unless a witness, who once had knowledge of what the record contains, testifies."). The Eighth Circuit Court of Appeals has determined that when a declarant is unavailable, a deposition may suffice to lay a foundation for a

---

[18] I rejected the defendants' arguments that Navrkal's taped statement is admissible under Rules 803(2), 803(6), or 807. Memorandum Opinion And Order at 35 (docket no. 91); Memorandum Opinion And Order at 9 (docket no. 96).

[19] Defendants indicate that Navrkal is not available to testify. In the parties' final pre-trial order, the defendants state, "Ms. Navrkal is expected to testify by deposition regarding her knowledge of the incident on September 13, 2006 in her capacity as an eyewitness. Defendants do not guarantee Ms. Navrkal's presence." Final Pretrial Order at 3 (docket no. 115).

recorded recollection. *See Newton v. Ryder Transp. Servs., Inc.*, 206 F.3d 772, 773-75 (8th Cir. 2000) (finding officer's accident report admissible as a recorded recollection, based on officer's deposition); *cf. Hoselton v. Metz Baking Co.*, 48 F.3d 1056, 1062 (8th Cir. 1995) (affirming district court's decision to allow accountant's deposition, where accountant was unavailable, to be read into evidence under Rule 804(b)(1) to lay the foundation for admission of accountant's notes as a business record under Rule 803(6)). Therefore, Navrkal's deposition may be sufficient to qualify her prior recorded statements as recorded recollections.

Rule 803(5) provides:

> (5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

FED. R. EVID. 803(5). "At its essence, the hallmark of all exceptions to the hearsay rule is the 'guarantee of trustworthiness.'" *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010) (quoting *Miller v. Keating*, 754 F.2d 507, 510 (3rd Cir.1985)). The Advisory Committee Notes to Rule 803(5) are instructive here: "The guarantee of trustworthiness [of a recorded recollection] is found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them." *Id.*, Advisory Committee Notes (citation omitted). Rule 803(5) "makes no attempt to spell out a precise method that courts should use for establishing the witness's initial knowledge or the contemporaneity and accuracy of the record in question, but rather leaves these matters to

be 'dealt with as the circumstances of the particular case might indicate.'" *Newton*, 206 F.3d at 774-75 (quoting FED. R. EVID. 803(5), Advisory Committee Notes); *see, e.g.*, *United States v. Riley*, 657 F.2d 1377, 1386 (8th Cir. 1981) (determining that the victim's taped and written statements qualified as recorded recollections where, although she could not remember the details of the events, she testified at trial that she remembered making the statements and that, at the time of the statements, she remembered what had happened).

Other courts have expressed concern about the accuracy of recorded statements made when the declarant was intoxicated or under the influence of drugs. Nevertheless, where other sufficient indications of accuracy exist, courts have admitted these statements as recorded recollections. *See United States v. Porter*, 986 F.2d 1014, 1017 (6th Cir. 1993) (even where declarant was "screwed up on drugs" when making the statement and was not sure she had told the truth, statement was recorded recollection where declarant admitted making it, made it soon after the incident and under penalty of perjury, appeared disingenuous when stating that she did not remember whether the statement was accurate, and the statement was internally consistent and consistent with other undisputed evidence in the case); *United States v. Edwards*, 539 F.2d 689, 692 (9th Cir. 1976) (even though declarant was drunk when he made the statement, it qualified as a recorded recollection; declarant testified that he remembered making it and, though he did not remember the underlying facts, believed it accurately reflected his recollection at the time it was made). *But see Gilbaugh ex rel. Gilbaugh v. Balzer*, No. CV99-1576-AS, 2001 WL 34041844, at *1 (D. Or. Feb. 26, 2001) (finding recorded statements not admissible as recorded recollections where declarant was drunk at the time of the incident and drunk when he made the statements, did not remember the incident, and wanted nothing to do with litigation).

Notably, the Sixth Circuit Court of Appeals in *Porter* highlighted that the declarant's testimony at trial assuaged any potential concerns about reliability of the recorded recollection:

> Rule 803(5) . . . is not of a particularly unreliable genre. This is because the out-of-court declarant is actually on the witness stand and subject to evaluation by the finder of fact . . . . If the jury chose to believe what [the declarant] said in the recorded statement rather than what she said while testifying, that decision was at least made based upon which it observed and heard from her in court.

*Id*. (citing *United States v. Williams*, 571 F.2d 334, 350 (6th Cir. 1978)); *see also Parker*, 327 F.3d at 215 (finding that police officer's memorandum was a recorded recollection where, even though he did not remember the events described, he testified that he had "reason to believe" that it accurately reflected his knowledge at the time; and concluding that the officer's availability for cross-examination sufficed to ensure the statement's reliability).

The circumstances here do not indicate that Navrkal's recorded statements accurately reflected the knowledge she had about the incident. Her statements may otherwise meet the requirements for a recorded recollection: she has no present recollection of what occurred, *see* Appendix to Plaintiff's Second Motion in Limine, Videotaped Deposition of Cristina Navrkal at 35 (docket no. 116-3); she did appear to have at least some knowledge of what occurred because she was an eyewitness (though she was intoxicated at the time); and she made the statements shortly after the incident, which suggests they were made while the knowledge was fresh in her mind. Nevertheless, her statements fail to meet the requirement that they correctly reflected the knowledge she once had.

Navrkal admitted she was intoxicated at the time of the incident and when she made both statements.  *Id.* at 36, 42.  Her recorded statements lack the indications of accuracy that other courts have used to determine that statements made while intoxicated correctly reflected a declarant's knowledge.  First, it does not appear that she remembers making either statement.  She explicitly stated that she does not remember making the written statement.  *Id.* at 35.  Regarding the taped statement, she had received a transcript of the taped statement before her deposition, and it is unclear from her deposition whether she remembered giving the statement apart from seeing the transcript.  *Id.* at 37.  Second, she could not state whether either statement correctly reflected her knowledge at the time the statements were made.  When asked whether the written statement was her "memory at that time of what happened," Navrkal answered, "I don't know.  I don't know.  I don't remember what happened.  I don't remember even writing that.  So I can't say I know that this is true or what I know now is true."  *Id.* at 35.  When asked whether the "tape would be [her] best recollection of what happened at the time," Navrkal replied, "No.  I could tell I was completely intoxicated.  I sound -- no, I don't believe that."  *Id.* at 48.  In fact, she specifically questioned whether the statements reflected her memory at the time.  She noted that in both statements, she referred to Koehler as an ambulance worker when in fact he was a police officer (she had learned before the deposition that he was a police officer): "I don't think I would have said in a written statement and a recorded statement it was an ambulance guy if I was remembering correctly.  I would know the difference no matter – if I was drunk, I know what a cop looks like and what a paramedic looks like."  *Id.* at 43.

The strongest argument in favor of the defendants' position comes from Navrkal's statements later in the deposition, when she noticed that she described the facts in her voluntary witness statement and her videotaped statement in a similar way.  She took this similarity to mean that the statements might have reflected what she believed at the time.

When her deposition is considered as a whole, however, it is clear that Navrkal continued to question whether the statements accurately reflected her knowledge at the time. When asked by Shannon's attorney on cross whether the written statement was "accurate as far as [her] memory is concerned," Navrkal still replied, "I don't remember it, so I can't say this is accurate or I cannot say it is not accurate." *Id.* at 55. When then asked about the recorded statement, she answered, "Once again, I don't remember, so I can't say. I think that the recording and the paper were somewhat similar, so I believe it was probably to me what was accurate at the time. But can I say was it accurate now? No, I can't." *Id.* at 55-56. Her strongest assertion that the statements reflected her knowledge at the time occurred during re-direct by defense counsel. Regarding the written statement, when defense counsel asked, "you wrote what you thought happened at that time; is that correct?", Navrkal responded, "Correct." *Id.* at 58. This response, however, must be viewed in context with what Navrkal said next. Immediately after, defense counsel asked, "Would it be fair to say that the audiotape that we've listened to would have been you describing what you thought happened at that time?" Navrkal replied,

> I believe so because they sound similar. Now, I was intoxicated in that and then the fact that I'm saying the ambulance person and even if I was intoxicated, if I drove Jill there, then I was able to see the difference between a paramedic and an officer. So that part makes me question what I was saying. So I don't know if there was a paramedic there or not that night, so with that, I don't know. But I believe that -- I mean, if the things are the same, the written and the recording, that's probably what I believed happened because I wouldn't have wrote this and said that at two separate people.

*Id.* at 58-59. At best, even viewing her responses on re-direct without the rest of her deposition, Navrkal indicated—at defense counsel's prodding—that the statements

"probably" reflected what she believed to have happened, but she was still skeptical. When considered in light of all of her responses, her answers on re-direct are even less convincing. Even given the indication of some consistency between her two recorded statements, in light of Navrkal's entire deposition, I cannot say that her voluntary witness statement or her taped statement accurately reflected her knowledge of events at the time.

Additionally, when other courts have determined that statements made while the declarant was intoxicated were recorded recollections, the declarant has testified at trial. *See Edwards*, 539 F.2d at 692; *Porter*, 986 F.2d at 1017; *cf. Parker*, 327 F.3d at 215. As the Sixth Circuit Court of Appeals pointed out in *Porter*, the fact that the declarant testified was an important safeguard for reliability. *Porter*, 986 F.2d at 1017. Here, the defendants state that Navkral is not available for trial. Consequently, the jury in this case will not be able to evaluate her credibility first hand and compare her testimony at trial with her recorded recollections. Thus, yet another assurance of the reliability of Navrkal's recorded statements is missing in this case. All told, the "hallmark . . . 'guarantee of trustworthiness'" of hearsay exceptions is absent here. *See Brunsting*, 601 F.3d at 817 (quoting *Miller*, 754 F.2d at 510).

Therefore, Navrkal's voluntary witness statement and taped statement are not admissible as recorded recollections. To the extent the Sioux City Police Department incident reports or other exhibits contain these statements, the defendants must redact them. Additionally, other witnesses may not refer, directly or indirectly, to these statements. If Navrkal becomes available to testify at trial, the defendants may request that I revisit this issue.[20] Also, if she is available to testify, any prior inconsistent statements

---

[20] I note, though, that even if the statements qualified as recorded recollections, the defendants could only read the statements into evidence and could not admit them as

(continued...)

may come in to impeach her.  *See* FED. R. EVID. 613.  At this time, though, this portion of Shannon's second motion in limine is granted.

### C. Defendants' Motion To Exclude Plaintiff's Experts

### 1.    Arguments of the Parties

The defendants ask that I exclude Shannon's experts Joseph Stine and Zhongming Huang.  As a preliminary matter, I note that several of the issues raised in this motion relate solely to the *Monell* claim, which is not at issue in this trial.  Zhongming Huang's testimony relates solely to the *Monell* claim.  Thus, I will deny the defendants' motion as to Huang as premature, but they may raise issues as to Huang's testimony before the second part of this bifurcated trial if necessary.  The defendants also question Stine's ability to offer expert testimony on *Monell* liability.  Likewise, I will not address that portion of Stine's expert testimony and will deny the defendants' motion as to Stine's opinions on *Monell* liability as premature.  Again, the defendants may raise that issue before the second part of the trial if necessary.  Regarding the late timing of the defendants' Motion To Exclude Plaintiff's Experts, I agree with Shannon that the defendants should have requested a *Daubert* hearing earlier.  Nevertheless, I will still address the merits of the defendants' arguments in this Order without a *Daubert* hearing.

The defendants ask that I exclude Joseph Stine's expert testimony as unreliable and wholly unhelpful to the jury or, in the alternative, that I exclude the parts of his opinion that are unhelpful to the jury.[21]  The defendants assert that Stine's opinion is unreliable

---

[20](...continued)
exhibits.  FED. R. EVID. 803(5); *see also Newton*, 206 F.3d at 774.

[21] For the purposes of their memorandum, the defendants "assum[e] arguendo" that
(continued...)

54

because it relies on an incomplete and biased version of the facts. Next, they argue that Stine's opinion is wholly unhelpful because it consists of little more than legal conclusions as to the "reasonableness" of Koehler's conduct and speculation as to Koehler's state of mind. They also argue that Stine's assessment of Koehler's conduct under "generally accepted police practices" is unhelpful to the jury because it is irrelevant to whether Koehler's conduct was reasonable in this case. They argue that, even if Stine is allowed to testify, he should not be permitted to testify as to the witnesses' credibility and which version of the disputed facts is correct (including testimony as to what occurred in the surveillance video). The defendants ask that I specifically bar Stine's opinion on the following: (1) whether Koehler exercised proper police procedures; (2) Koehler's leg sweep method; (3) whether Koehler's use of force was unreasonable, excessive, dangerous, an abuse of police power, gratuitous, reckless (or any similar adjective) under the circumstances; (4) whether Koehler was "punishing" Shannon; and (5) whether Koehler unreasonably seized Shannon.

Shannon first asserts that Stine's testimony meets the requirements of Rule 702. Shannon specifically notes that Stine's opinion is based on reliable methods and principles because Stine relied, at least in part, on the Sioux City Police Department's own policies and the Commission on Accreditation for Law Enforcement Agencies' (CALEA) reports on the Sioux City Police Department, which is a CALEA-accredited department. In response to the defendants' arguments that Stine's testimony is unreliable because it is

---

[21](…continued)
Stine is qualified. Defendants' Motion in Limine To Exclude Plaintiff's Experts at 7 (docket no. 99-1). In a footnote, the defendants state that they question Stine's qualifications as an expert witness but chose to focus their memorandum on whether his testimony is reliable and will assist the trier of fact.

based on incomplete facts, Shannon argues that Stine's report is factually accurate and indicates that he reviewed the surveillance video of the incident and various witness depositions.

Shannon maintains that Stine's opinion would be helpful to the jury. Shannon specifically asserts that Stine's opinion as to whether Koehler followed generally accepted police practices and procedures in his take-down of Shannon would be helpful to the jury, as ordinary citizens are not familiar with proper police procedures or with the situations that police frequently encounter. In reviewing the case law on experts in excessive force cases, Shannon argues that numerous courts have allowed experts to testify as to whether an officer followed proper police policies. Shannon also asserts that Stine can offer expert testimony to explain Koehler's training for the jury. He argues more generally that expert testimony is proper in this case because police work is becoming an increasingly professionalized field. Shannon maintains that Stine's opinion should not be excluded for addressing whether Koehler used excessive force, as experts are permitted under Rule 704 to testify to ultimate issues in a case. Shannon insists that whether an officer used excessive force is not a legal question, but rather a question of fact for the jury.

The defendants reply that Stine's deposition and reports do not indicate that he relied on Sioux City Police Department Policies or CALEA standards. The defendants add, in response to Shannon's argument that Stine can testify about Koehler's training, that Stine is not qualified to testify as to Koehler's training, as he is not an expert in Iowa police training.

### 2.    *Analysis*

Rule 702 of the Federal Rules of Evidence provides for expert testimony as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to

determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharamceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court explained that the trial judge's role under Rule 702 is to act as "gatekeeper," admitting expert testimony only if it is both relevant and reliable. *Id.* at 589. The Court later added in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), that this gatekeeping function applies to all types of expert testimony, not just scientific testimony. *Id.* at 147; *see also Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003). The trial court is granted broad discretion in its determination of reliability. *Kumho*, 526 U.S. at 142.

The Eighth Circuit Court of Appeals has explained that "[t]he gatekeeper role should not . . . invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence." *United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003) (citing *Arkwright Mut. Ins. Co. v. Gwinner Oil Co.*, 125 F.3d 1176, 1183 (8th Cir. 1997)). "As the Supreme Court emphasized in *Daubert*, 509 U.S. at 595-96, 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.*; *see also Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) ("[M]ere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony.") (citing *Daubert*, 509 U.S. at 596)).

Thus, "'[e]xpert testimony is admissible if it is reliable and will help the jury understand the evidence or decide a fact in issue.'" *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 356 F.3d 850, 858 (8th Cir. 2004) (quoting *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1060 (8th Cir. 2002)). Doubts regarding the admissibility of expert testimony should be resolved in favor of its admission. *See Clark By and Through Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) (citing *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988)); *accord Synergetics*, 477 F.3d at 955-56 (quoting *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)); *Archer Daniels Midland Co.*, 356 F.3d at 858 ("Generally, the factual basis of an expert's opinion goes to credibility of the testimony, not admissibility."). The Eighth Circuit Court of Appeals has instructed, "'Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.'" *United States v. Coutentos*, ___ F.3d ___, 2011 WL 3477190, at *8 (8th Cir. 2011) (quoting *Hartley*, 310 F.3d at 1061); *accord Archer Daniels Midland Co.*, 356 F.3d at 858 (quoting *Bonner*, 259 F.3d at 929-30). Nevertheless, where "subject matter is within the jury's knowledge or experience, . . . the expert testimony remains subject to exclusion 'because the testimony does not then meet the helpfulness criterion of Rule 702.'" *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) (quoting *United States v. Arenal*, 768 F.2d 263, 269 (8th Cir. 1985)) (affirming district court's exclusion of expert's opinion as to what was visible in still-screen shots of a video).

Rule 704(a) explicitly permits an expert to testify to an "ultimate issue" in a case: "(a) Except as provided in subdivision (b) [pertaining to a criminal defendant's mental

state], testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704(a). The Eighth Circuit Court of Appeals has explained the interaction of Rule 704(a) with the general requirements for expert testimony found in Rule 702:

> Under Rule 702, a qualified expert may give opinion testimony if the expert's specialized knowledge would help the jury understand the evidence or decide a fact in issue. *United States v. Arenal*, 768 F.2d 263, 269 (8th Cir. 1985). Although an expert opinion is not inadmissible merely "because it embraces an ultimate issue to be decided by the trier of fact," FED. R. EVID. 704(a), not all expert opinions are admissible. *Arenal*, 768 F.2d at 269. Opinions that are "phrased in terms of inadequately explored legal criteria" or that "merely tell the jury what result to reach" are not deemed helpful to the jury, FED. R. EVID. 704 advisory committee's note, and thus, are not admissible under Rule 702.

*United States v. Whitted*, 11 F.3d 782, 785 (8th Cir.1993); *accord Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 751 (8th Cir. 2003) (affirming the trial court's rejection of an expert's legal opinions that "attempt[ed] to tell the court [as the trier of fact] what result to reach") (citations omitted)). A court should exclude an expert's testimony if it instructs the jury on the law, as the court alone defines the law for the jury. *See United States v. Wells*, 63 F.3d 745, 753 (8th Cir. 1995), *rev'd on other grounds*, 519 U.S. 482 (1997).

Applying these concepts to § 1983 cases governed by the Fourth Amendment reasonableness standard, the Eighth Circuit Court of Appeals, despite Rule 704, has limited the ability of experts to offer opinions on the ultimate issue. In cases involving arrests without probable cause, even during a jury trial, probable cause is ultimately a question of law for the court, and the jury's role at trial is "limited to settling disputes as

to predicate facts." *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir.1995) (citing *Arnott v. Mataya*, 995 F.2d 121, 123-24 (8th Cir. 1993)). Therefore, an expert's opinion "concerning the reasonableness of the officers' conduct in light of 'Fourth Amendment standards'" is a "legal conclusion"on the ultimate issue of law, not a "fact-based opinion" that will assist the jury. *See id.*; *accord Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993) (finding that because the ultimate conclusion on probable cause is a question of law, expert's opinion on whether probable cause existed was an inadmissible "legal conclusion"); *see also Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (finding "opinions regarding the overall reasonableness" of evidence collection and strip search procedures to be "impermissible legal conclusions," not "fact-based opinions").

The Eighth Circuit Court of Appeals has likewise concluded that the ultimate question in excessive force cases is one of law: "'Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law.'" *McKenney*, 635 F.3d at 359 (quoting *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007)). Therefore, an expert's opinion in an excessive force case concerning the "reasonableness" or "excessiveness" of an officer's conduct under the Fourth Amendment would be an impermissible legal conclusion, not a fact-based opinion.

Nevertheless, courts have found that a police procedure expert's testimony may be proper on issues other than the "reasonableness" of an officer's conduct under Fourth Amendment standards. *See, e.g.*, *Coleman v. Rieck*, 154 F. App'x 546, 549 (8th Cir. 2005) (affirming district court's denial of judgment as a matter of law for the plaintiff where defendant officers' testimony, as well as "testimony from their expert that the force did not exceed national standards, supported the verdict that the force used was not excessive") (citation omitted)); *Wilson v. City of Des Moines*, 293 F.3d 447, 453-54 (8th Cir. 2002) (finding question of fact existed, based on police-procedure expert's testimony

that although officers "acted correctly given the circumstances with which they were presented" up until a point, "the use of force by the officers was 'totally unwarranted'"); *Kladis v. Brezek*, 823 F.2d 1014, 1019 (7th Cir. 1987) (affirming district court's decision to allow police expert "to testify as to proper level of force to be used by police in various situations" where expert witness "testified as to his credentials and informed the court that he frequently instructs police officers in the proper use of force"). Still, expert testimony in excessive force cases is not always necessary or appropriate:

> Although in some instances expert testimony may assist the jury in determining whether an officer used excessive force, *see Kladis* [, 823 F.2d at 1019], expert testimony is by no means required in all excessive force cases. Since the question of excessive force is so fact-intensive, the jury will often be "in as good a position as the experts" to decide whether the officer's conduct was "objectively reasonable." *Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2006).

*United States v. DiSantis*, 565 F.3d 354, 364 (7th Cir. 2009).

I have reviewed Stine's materials and the parties' Final Pretrial Order, in which Shannon indicates that Stine will testify to "police practices and procedures and the procedures Michael Koehler used on September 13, 2006." *See* Final Pretrial Order at 2 (docket no. 115). The parties have not submitted sufficient information for me to determine whether Stine is qualified under Rule 702 to testify as an expert in this field. He has extensive experience as a police chief and police trainer, but nearly all of his experience has occurred in Pennsylvania, though he states his "expertise in these areas has been accepted in numerous state and federal courts." *See* Defendants' Exhibit 1, Joseph J. Stine's Expert Opinion Report at 1 (docket no. 99-2). His opinions regarding Koehler's conduct appear to be based mostly on "generally accepted practice and procedure for a professional police officer," *see* Defendants' Exhibit 1, Joseph J. Stine's Expert Opinion

Report (docket no. 99-2), although he does offer opinions on whether Koehler complied with Iowa standards in his supplementary opinion, *see* Defendants' Exhibit 3, Joseph J. Stine's Supplementary Opinion at 1 (docket no. 99-4). It is unclear to me whether Stine's experience qualifies him to testify to generally accepted standards or to Iowa standards. Therefore, I reserve ruling on whether he is qualified until trial. For the limited purposes of this order, I will assume that he is qualified, so that I may address the defendants' arguments that, even if Stine is qualified, his opinions should be excluded because they are unreliable and unhelpful to the jury.

As to reliability, the defendants' concerns about the factual basis of Stine's testimony do not warrant the exclusion of Stine's testimony as unreliable. "[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." *See Hose*, 70 F.3d at 974 (citing *Loudermill*, 863 F.2d at 570). Stine indicates in his report that he reviewed the video of the incident, audiotaped statements by the witnesses, audio of dialogue at the scene, Koehler's deposition for the criminal trial, and Shannon's deposition, among other documents. *See* Defendants' Exhibit 1, Joseph J. Stine's Expert Opinion Report at 2 (docket no. 99-2). Cross-examination is the defendants' opportunity to scrutinize and question the facts on which Stine based his opinion. *See Hose*, 70 F.3d at 974 (citing *Loudermill*, 863 F.2d at 570).

The defendants also appear to question the reliability of the methods and standards that Stine used in formulating his opinion. Stine's report mostly evaluates Koehler's conduct under "generally accepted practices and procedures for a professional police officer." *See* Defendants' Exhibit 1, Joseph J. Stine's Expert Opinion Report at 8 (docket no. 99-2). His report does not clarify what standards he used to define "generally accepted practices and procedures." Because there is insufficient information for me to decide

whether Stine used reliable methods in defining "generally accepted practices and procedures," I reserve ruling on the reliability of his methods until trial.

Even if Stine is qualified to testify, there are several areas of his opinion that will be inadmissible. His opinion refers to Koehler's conduct as "unreasonable" and "excessive." *See* Defendants' Exhibit 1, Joseph J. Stine's Expert Opinion Report at 8, 10, 12 (docket no. 99-2); Defendants' Exhibit 3, Joseph J. Stine's Supplementary Opinion at 2 (docket no. 99-4). At trial, Stine may not opine on Koehler's conduct in terms of the Fourth Amendment reasonableness standard, such as whether his conduct was "unreasonable" or "excessive" or whether Koehler "unreasonably seized" Shannon. *See Schmidt*, 557 F.3d at 570-71; *Peterson*, 60 F.3d at 475; *Estes*, 993 F.2d at 163. I also find that his conclusion that Koehler's conduct was "a shocking abuse of police powers," Defendants' Exhibit 1, Joseph J. Stine's Expert Opinion Report at 10 (docket no. 99-2), too closely resembles a legal conclusion on reasonableness; thus, he may not testify to that conclusion at trial. His report also defines when police force is excessive or reasonable. *Id.* at 8 (docket no. 99-2). Stine may not define what constitutes reasonable or excessive force at trial, as he may not instruct the jury on the law. *See Wells*, 63 F.3d at 753.

Additionally, Stine may not opine as to the credibility of witnesses during his testimony, as it is the jury's "job . . . to decide issues of credibility and to determine the weight that should be accorded evidence." *Vesey*, 338 F.3d at 917. Stine's report also includes his opinion of what is visible in the surveillance video. *See* Defendants' Exhibit 1, Joseph J. Stine's Expert Opinion Report at 5-6 (docket no. 99-2). He may not testify as to what is visible in the video, as the ability to watch and discern images in a video is "within the jury's knowledge or experience." *See Lee*, 616 F.3d at 809. To find otherwise would allow Stine to "merely tell the jury what result to reach." *See Whitted*, 11 F.3d at 785. Stine's opinions as to Koehler's subjective mental state (that Koehler was

"punishing" Shannon) are inadmissible because, beyond being speculative, they are irrelevant to the objective reasonableness standard that governs this case. *See Graham*, 490 U.S. at 397 (subjective intent irrelevant). I find that the defendants paint with too broad of strokes, however, in characterizing much of Stine's opinion as speculation as to Koehler's state of mind. Whether Shannon constituted a threat to a reasonable officer, for example, does not reflect Koehler's subjective state of mind and, instead, is relevant to the inquiry in this case. *See id.* at 396.

Despite these inadmissible portions of Stine's report, I do not conclude at this time, based on the information that the parties have provided me, that his testimony is wholly inadmissible. If Stine is qualified and used reliable methods, his testimony as to whether Koehler's conduct complied with generally accepted police practices could be helpful to the jury in determining whether Koehler acted reasonably. *See, e.g.*, *Wilson*, 293 F.3d at 453; *Coleman*, 154 F. App'x at 549; *see also DiSantis*, 565 F.3d at 364; *Kladis*, 823 F.2d at 1019. This is especially true here because the parties dispute whether Koehler's leg sweep was proper. Moreover, the defendants plan to offer their own expert, Ken Katsaris, who intends to testify to the same issue of police practices and procedures: "Mr. Katsaris is expected to provide expert testimony regarding standard police practice and procedures relative to use of force and Officer Koehler's compliance therewith . . . ." Final Pretrial Order at 3 (docket no. 115). Therefore, if Stine were qualified and used reliable methods, the jury could benefit from receiving an expert perspective from each side on Koehler's conduct.

Based on the information the parties have supplied, I cannot conclude at this time that I should exclude Stine's opinion because he is unqualified or because his testimony is unreliable or wholly unhelpful to the jury. I reserve ruling on those issues until trial.

Therefore, this portion of the defendants' motion in limine is denied, except

to grant the defendants' request that Stine not offer conclusions as to whether Koehler's conduct was excessive, unreasonable, or a "shocking abuse of police powers"; opinions about the credibility of witnesses or about what occurred in the surveillance video; or conclusions about Koehler's state of mind at the time of the incident.

## III. CONCLUSION

THEREFORE, I

1. Grant Defendants' Motions in Limine (docket no. 98), to the extent that,

a) Shannon may not refer, directly or indirectly, to the November 3, 2006, complaint involving Koehler, and may not refer, directly or indirectly, to the July 2, 2005, complaint involving Koehler, unless Shannon shows some permissible other purpose under Rule 404(b);

b) Neither party may refer, directly or indirectly, to the motor vehicle accident on October 26, 2005;

c) Neither party may refer, directly or indirectly, to the El Forastero investigation;

d) Neither party may refer, directly or indirectly, to offers of compromise or to "Golden Rule" arguments;

e) Neither party may refer, directly or indirectly, to the *Monell* or *respondeat superior* claims against the City of Sioux City and Joseph Frisbie or otherwise refer, directly or indirectly, to bifurcation issues.

2. Deny Defendants' Motions in Limine (docket no. 98), to the extent that,

a) Shannon may refer, directly or indirectly, to his acquittals for assault of a peace officer and public intoxication, subject to a limiting instruction from the court. The defendants will be permitted to present evidence regarding Shannon's criminal charges

from September 13, 2006, and interference with official acts conviction, subject to a limiting instruction from the court. My proposed limiting instruction is attached *infra* in the Appendix;

      b) Defendants' motion to exclude any evidence of excessive force complaints after September 13, 2006, against the Sioux City Police Department, as they relate to the unconstitutional custom or practice of the Sioux City Police Department or Joseph C. Frisbie, is premature.

    3. Grant Shannon's Second Motion in Limine (docket no. 119), to the extent that,

      a) The defendants may not refer, directly or indirectly, to the fact that Shannon's 2011 felony conviction was his third OWI offense;

      b) The defendants may not refer, directly or indirectly, to Cristina Navrkal's voluntary witness statement or her taped statement.

    4. Deny Shannon's Second Motion in Limine (docket no. 119), to the extent that the defendants may refer, directly or indirectly, to Shannon's 2011 felony "Operating While Intoxicated" conviction to impeach his credibility under Rule 609(a), subject to a limiting instruction.

    5. Grant Defendants' Motion to Exclude Plaintiff's Experts (docket no. 99), to the extent that Shannon may not refer, directly or indirectly, to Joseph Stine's opinions about whether Koehler's conduct was excessive, unreasonable, or a "shocking abuse of police powers"; the credibility of witnesses or about what occurred in the surveillance video; or Koehler's state of mind at the time of the incident.

    6. Deny Defendants' Motion to Exclude Plaintiff's Experts (docket no. 99), to the extent that,

      a) I reserve ruling on whether Joseph Stine is qualified and whether his testimony is relevant and reliable;

b) Defendants' motion to exclude or limit Stine's testimony on the *Monell* claim is premature;

c) Defendants' motion to exclude or limit Zhongming Huang's testimony is premature.

**IT IS SO ORDERED.**

**DATED** this 16th day of September, 2011.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

## IV. APPENDIX: PROPOSED LIMITING INSTRUCTION

Timothy Shannon was found not guilty of public intoxication and assault of a peace officer. Both of these charges arose from the events of September 13, 2006, that are at issue in this case. The not guilty verdicts only show that the prosecution was not able to prove its cases beyond a reasonable doubt. The burden of proof in a criminal case, beyond a reasonable doubt, is higher than in this case, where the burden of proof is a preponderance of the evidence.

Timothy Shannon's conviction for interference with official acts has no bearing on this trial, other than to show that he knowingly resisted Michael Koehler when Koehler performed the act of handcuffing Shannon on September 13, 2006. While you may consider Shannon's knowing resistence, knowing resistence alone is not enough to defeat a claim of excessive force.

Keep in mind that you must decide this case solely on the evidence presented to you in this trial.